**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| RITCHIE RISK-LINKED STRATEGIES, L.L.C,[1] | Case No. 18-11555 (KJC) |
| Debtor. | **Objections Due: August 13, at 4:00 p.m. (Eastern)**<br>**Hearing Date:  September 4, 2018, at 1:30 p.m. (Eastern)** |

**APPLICATION OF DEBTOR IN POSSESSION FOR ENTRY**
**OF AN ORDER PURSUANT TO SECTIONS 327(a), 328, AND 329 OF**
**THE BANKRUPTCY CODE, FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE 2014 AND 2016, AND LOCAL BANKRUPTCY RULES 2014-1 AND**
**2016-1 AUTHORIZING THE EMPLOYMENT AND RETENTION OF REED SMITH LLP**
**AS ITS BANKRUPTCY COUNSEL *NUNC PRO TUNC* TO THE PETITION DATE**

Ritchie Risk-Linked Strategies, L.L.C. ("RRLS" or the "Debtor") respectfully submits this Application for Entry of an Order Pursuant to Sections 327(a), 328, and 329 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1 Authorizing the Employment and Retention of Reed Smith LLP ("Reed Smith") as its Bankruptcy Counsel *Nunc Pro Tunc* to the Petition Date (the "Application").  In support of the Application, the Debtor relies upon and incorporates by reference the Unsworn Declaration Pursuant to 28 U.S.C. § 1746(2), Federal Rules of Bankruptcy Procedure 2014(a) and 2016(b) and Local Rules 2014-1 and 2016-1 of Kurt F. Gwynne, Esquire, a Partner in Reed Smith (the "Declaration"), which is attached as Exhibit 1.  In further support of this Application, the Debtor states as follows:

**I.     JURISDICTION AND VENUE**

1.     This Court has jurisdiction to consider the Application under 28 U.S.C. §§ 1334 and 157.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1] The last four digits of the Debtor's tax identification number are 0458.

2.       Venue of this case and the Application are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The statutory and other predicates for the relief requested herein are sections 327(a), 328 and 329 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1.

## II.    FACTUAL BACKGROUND

4.       On June 28, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case (the "Chapter 11 Case").

5.       The Debtor, via its managing member, continues to manage its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### A.    Overview of the Debtor

6.       RRLS is a private investment fund organized as a limited liability company under the laws of the State of Delaware in 2004.

7.       Ritchie Partners, LLC ("Ritchie Partners") is the managing member of RRLS.

8.       Richie Capital Management, LLC ("RCM") is the manager of Ritchie Partners.

9.       RRLS was the onshore "feeder fund" in a master feeder fund structure comprised of a number of separate legal entities that specialized in investments in insurance-related securities and other assets (the "Risk-Linked Strategy Fund Structure").

10.       Among the insurance-related assets that several of the entities associated with the Risk-Linked Strategy Fund Structure invested in, directly or indirectly, were "life settlements."[2]   A "life settlement" is a contract for the purchase of a life insurance policy in which the purchaser buys

---

[2] Also known as "viatical settlements."

the life insurance policy from the insured, pays the premiums on the policy during the remainder of the insured's life, and recovers the policy's death benefits upon the insured's death.

11.     Ritchie Risk-Linked Strategies Trading, Ltd. (the "RRL Master Fund") was the master fund in the master/feeder fund structure utilized by the Risk-Linked Strategy Fund Structure. Ritchie Risk-Linked Strategies, Ltd. (the "RRL Offshore Feeder Fund") was the offshore feeder fund for the Risk-Linked Strategy Fund Structure.

12.     At all times relevant to this application, RRLS, the RRL Master Fund and the RRL Offshore Feeder Fund have been separate legal entities.  Each of these separate legal entities held a license to use the "Ritchie" name and certain related intellectual property.

13.     RRLS and the RRL Offshore Feeder Fund used some of their capital to purchase equity securities and debt securities, respectively, from two special purpose entities organized under the laws of the Republic of Ireland called Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. ("RRLST (Ireland) I") and Ritchie Risk-Linked Strategies Trading (Ireland) II, Ltd. ("RRLST (Ireland) II").  Those entities used the capital to purchase life settlements from an affiliate of Coventry First, LLC (together with its affiliates, "Coventry First").  Coventry First was the originator of the life settlements (i.e., the entity that purchased the life insurance policies from the insureds).

14.     In 2005 and 2006, each of RRLST (Ireland) I and RRLST (Ireland) II entered into purchase agreements with Coventry under which they acquired at least 1,000 life settlements for a total purchase price of approximately $700 million with the goal of creating the first successful investment-rated securitization of this asset class.  The proposed securitization contemplated that RRLST (Ireland) I and RRLST (Ireland) II would transfer the life settlements to other special

purpose entities that would then issue securities, the holders of which would ultimately share in the cash generated by the pooled and securitized life settlement assets.

**B.      Events Leading to the Debtor's Bankruptcy Filing**

**1.      The Chapter 11 Bankruptcy Cases of RRLST (Ireland) I and RRLST (Ireland)**

15.     As of October 26, 2006, RRLST (Ireland) I and RRLST (Ireland) II held title to approximately 1,000 life settlements that they had purchase for a total price of about $700 million. That same day, then New York Attorney General Elliot Spitzer filed a Complaint against, among others, Coventry First, alleging that Coventry First, as the initial  purchaser of life insurance policies (some of which had been re-sold to RRLST (Ireland) I and RRLST (Ireland) II), had engaged in fraudulent or deceptive business  practices in the acquisition of policies from the original insureds such that the initial purchase agreements were subject to rescission (the "NYAG Rescission Complaint").

16.     As a result of the NYAG Rescission Complaint, RRLST (Ireland) I and RRLST (Ireland) II no longer held marketable title to the life settlements they had acquired from Coventry First.  As a result, Moody's withdrew the preliminary rating that it had issued in connection with the prospective securitization.  Without a rating from Moody's, the contemplated securitization was in legal purgatory.  Worse yet, in order to maintain the value of the life settlements, RRLST (Ireland) I and RRLST (Ireland) II had to continue paying the premiums on the underlying life insurance policies that were the subject of the NYAG Rescission Complaint.

17.     Consequently, in order to maximize the value of their interest in the life settlements, on June 20, 2007, RRLST (Ireland) I and RRLST (Ireland) II filed petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York (the "SDNY Court") under cause numbers 1:07-BK-11906 and 1:07-BK-11907.

18.     By around January 2008, the SDNY Court approved the sale of the underlying life settlement assets free and clear of liens and the cloud on title arising from the NYAG Rescission Complaint pursuant to section 363 of the Bankruptcy Code.   After the sale and satisfaction of secured claims, there were insufficient liquid assets to pay the allowed unsecured claims or make any distributions to the holders of equity security interests.

19.      In September 2008, the SDNY Court entered orders confirming the Joint Plan of Liquidation Plan filed by RRLST (Ireland) I and RRLST (Ireland) II.  The confirmed plan provided for the prosecution of certain causes of action against Coventry First and related parties in the name of the two RRLST Irish Funds (the "Coventry Litigation") and, in the event of a recovery of damages, for the distribution of a share of the net proceeds from the Coventry Litigation to the holders of allowed unsecured claims.   The holders of equity interests in the debtors received nothing under the confirmed plan.

### 2.      The Huizenga Investments and Litigation

20.     Huizenga Managers Fund, LLC ("Huizenga") is a limited liability company formed pursuant to the laws of the State of Delaware, which purchased interests in RRLS in two separate transactions that took place entirely in the State of Illinois between June 2, 2005 and October 1, 2005.

21.     On or about June 29, 2005, Huizenga executed (and subsequently delivered to RRLS) the Subscription Agreement (the "First Subscription Agreement") by which it subscribed to purchase an interest in RRLS.  By "Confirmation of Subscription," dated August 27, 2005, RRLS notified Huizenga that RRLS "hereby accepts the subscription as described above [effective August 1, 2005] in reliance on the representations, warranties and covenants contained in the Subscription

Agreement" (the "<u>August 2005 Sale</u>").  On or about August 1, 2005, Huizenga directed its bank to electronically transfer $6 million to a deposit account held in the name of RRLS.

22.    On or about September 28, 2005, Huizenga signed an Additional Investment Subscription Form (the "<u>Second Subscription Agreement</u>") by which it subscribed to purchase additional interests in RRLS.  The Second Subscription Agreement provided that Huizenga's subscription of the additional interests was subject to all of the representations, warranties and covenants contained in the First Subscription Agreement.  The funds for these additional interests, in the amount of $4,664,542, were proceeds from Huizenga's withdrawal of its capital in another private investment fund named Ritchie Energy, LLC that Huizenga had previously purchased ("<u>Ritchie Energy Redemption</u>").  On or about October 1, 2005, Ritchie Partners caused the proceeds of the Ritchie Energy Redemption to be transferred to RRLS, in consideration for the additional interests in RRLS issued to Huizenga effective October 1, 2005 (the "<u>October 2005 Sale</u>").

23.    On April 6, 2007, Huizenga commenced a lawsuit in Illinois state court against RRLS, Ritchie Partners, RCM and several individual defendants[3] in Illinois Circuit Court for rescission and damages relating to alleged violations of the Illinois Securities Law of 1953, as amended, 815 ILCS 5/1 *et seq.*, the Delaware Securities Act ("<u>Delaware Blue Sky Law</u>"), Del. Code Ann. tit. 6, *§ 7301 et seq.,* and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.,* and alleged fraud, breach of fiduciary duties and an accounting, all of which allegedly arose from Huizenga's purchase of interests in RRLS in the August 2005 Sale and the October 2005 Sale.

24.    On October 2, 2008, Huizenga filed a Second Amended Complaint in which Huizenga alleged violations of the Delaware Blue Sky Law and fraud, breach of fiduciary duty and

---

[3] The other defendants were A.R. Thane Ritchie, Ritchie Capital Management, LLC, Ritchie Capital Management (Bermuda) Ltd., Douglas R. Rothschild, Duncan Goldie Morrison, and Paul Wolfe.

breach of contract pursuant to the common law of the State of Delaware, all of which allegedly arose from Huizenga's purchase of interests in RRLS.

25.    On or about January 15, 2009, Huizenga filed a Third Amended Complaint alleging, *inter alia*, violations of the Delaware Blue Sky Law, common law fraud, an allegedly direct cause of action for breach of fiduciary duty, a cause of action to recover damages for an alleged breach of contract, and two derivative causes of action alleging various breaches of fiduciary duty allegedly owed to RRLS by some of the defendants.

26.    On April 1, 2010, Huizenga moved to voluntarily dismiss its claims for common law fraud and breach of contract.    A bench trial was conducted on the remaining counts under the Delaware Blue Sky Law and the three counts (V, VII and VIII) seeking to recover damages alleged caused by breaches of fiduciary duty on available dates on the Court's calendar from around July 2010 to September 2011.

27.    On January 27, 2015, the Illinois trial court entered judgment as follows:

- Judgment in favor of defendants Ritchie Capital Management (Bermuda), Ltd., Rothschild, Goldie-Morrison, and Wolfe on all counts;

- Judgment in favor of all defendants on Counts V, VII and VIII (the Breach of Fiduciary Duty – direct and derivative counts);

- Judgment in favor of all defendants on Counts I and II under the Delaware Blue Sky Law with respect to the August 2005 Sale;

- Judgment against RRLS and Ritchie Partners on Count I with respect to the October 2005 Sale; and

- Judgment against non-selling defendants Ritchie Partners, Ritchie Capital Management, LLC, and A.R. Thane Ritchie ("Mr. Ritchie") on Count II for "secondary liability" with respect to the October 2005 Sale.

28.    The trial court's January 27, 2015, judgment expressly stated that "Huzienga is entitled to 'rescission' of its October 1, 2005 investment."[4]

---

[4] Notably, Count I treated both the August 2005 Sale and the October 2005 Sale as a single transaction and

29.    On July 7, 2015, after granting Huizenga's motion for reconsideration of the January 27, 2015, judgment, the trial court struck the words "for rescission of Huizenga's October 1, 2005 investment" from the first sentence of the "Conclusions" on page 53 of the judgment, and replaced those words with "for $4,664,542.00, which the Court concludes was the amount paid for plaintiff's second investment and the return of which therefore effects rescission of that investment." On August 25, 2015, the trial court amended the judgment concerning the October 2005 Sale to include prejudgment interest in the amount of $4,509,657.63 (for total damages of $9,174,199.63) and certified the Judgment as final for purposes of appeal.[5]

30.    RRLS, RCM, and other defendants, filed a timely notice of appeal from the judgments entered in January 2015, July 2015 and August 2015.

31.    Huizenga did not file a notice of appeal of the January 2015 judgment in favor of all eight defendants on Counts V, VII and VIII. Huizenga did, however, file a timely notice of cross-appeal from the trial court's January 2015 judgment in defendants' favor on Counts I and II as related to the August 2005 Sale.

32.    On December 29, 2016, the Illinois Appellate Court affirmed the trial court's judgments with respect to the October 2005 Sale, but reversed the trial court's ruling with respect to the August 2005 Sale. *Huizenga Managers Fund LLC v. A.R. Thane Ritchie, et al.*, 2016 IL App (1st) 152733-U.

33.    The Appellate Court concluded that the trial court should enter judgment in Huizenga's favor "on the initial investment in the amount of $6 million. We remand, however, for

---

requested "rescission" under the Delaware Blue Sky Law of that single transaction. Over the defendants' objections, Huizenga was allowed to file a fourth amended complaint in July 2015, almost 4 years after completion of the trial to add allegations of facts that were not contained in the four complaints filed between April 2007 and January 2009.

[5] Notably, the August 25, 2015 amended judgment does not address Huizenga's alleged entitlement to an award of attorneys' fees under the Delaware Blue Sky Law.

the trial court to calculate any prejudgment interest it sees fit." Thus, the Appellate Court did not expressly conclude that "rescission" was appropriate or that the trial court should award money damages "against" any of the non-selling defendants (*e.g.*, Ritchie Partners, RCM and Mr. Ritchie).

34.     Moreover, the Appellate Court did not hold that Huizenga was entitled to any award of attorneys' fees under the Delaware Blue Sky Law—for either the August 2005 Sale or the October 2005 Sale.

35.     RRLS filed an Appeal as a Matter of Right, or, in the Alternative, Leave to Appeal with the Illinois Supreme Court. On May 24, 2017, the Illinois Supreme Court denied RRLS leave to appeal.

36.     On October 20, 2017, RRLS filed a Petition for Writ of Certiorari with the United States Supreme Court, which was denied on January 16, 2018.

37.     On or about November 22, 2017, the first money judgment entered in August 2015 was satisfied from the appeal bond. The full amount of the August 25, 2015 money judgment including post-judgment interest was approximately $11.2 million.

38.     On or about October 13, 2017, upon remand, the trial court entered judgment for damages in the amount of $12,772,529.70 on account of the August 2005 Sale ("Second Money Judgment").

39.     As a result of supplementary proceedings, the Second Money Judgment was satisfied in full on or about April 25, 2018 when Huizenga executed upon approximately $13.83 million pursuant to an Order for Turnover issued by the Illinois Circuit Court.

40.     The defendants timely appealed the Second Money Judgment. RRLS filed a motion to voluntarily dismiss its appeal, which motion remains pending. The remaining defendants' second appeal is pending before the Illinois Appellate Court.

41.     The foregoing summary is *not* intended to be an exhaustive discussion of the litigation between the Debtor and Huizenga.  Indeed, a full, detailed summary of such litigation would take many pages and is unnecessary to resolution of this Application.  Suffice it to say that a great deal of collection matters and other litigation (including, without limitation, indemnification claims against Huizenga, assertion of attorneys' fees claims by Huizenga, litigation against the Debtor's insurers, and motions for sanction filed by Huizenga) have ensued.

42.     The Debtor commenced this Chapter 11 Case for the purposes of (a) maximizing the value of its litigation-related assets (including claims arising under multiple insurance policies) for the benefit of its constituents and to avoid seemingly endless, piecemeal litigation with Huizenga that is now in its 12th year and (b) attempting to resolve (or add order to the resolution of) claims by and against the Debtor.  The Debtor intends to propose a confirmable plan that will provide a means for the Debtor to resolve claims against the Debtor, prosecute certain causes of action that are property of the Debtor's bankruptcy estate, and provide for distributions to creditors according to their lawful priorities.

## C.     Reed Smith's Prepetition Services to RRLS

43.     Prior to the Petition Date, Reed Smith performed services and received compensation from the Debtor for services rendered, or to be rendered, in contemplation of, or in connection with, this Chapter 11 Case.  Reed Smith also represented the Debtor and certain other defendants affiliates in connection with litigation matters in, *inter alia,* Cook County, Illinois and the Delaware Superior Court, all as more fully detailed in the Declaration of Kurt F. Gwynne, annexed hereto as Exhibit 1.

44.     On May 26, 2017, RCM (the manager of Ritchie Partners, the Debtor's managing member) paid Reed Smith a $50,000 retainer for potential bankruptcy planning relating to RRLS.

As of the Petition Date, Reed Smith still held $15,173.60 of that retainer.  In addition, on June 28, 2018 and prior to the filing of the Debtor's bankruptcy petition, the Debtor paid Reed Smith an additional $140,000 security retainer for this Chapter 11 Case.  The Debtor also initiated an additional $33,000 security retainer, which payment was received in Reed Smith's account, post-petition, on June 29, 2018.  Including that payment, the Debtor paid Reed Smith the total amount of $223,000 for bankruptcy related services, of which Reed Smith continues to hold $188,173.60 as a general security retainer for post-petition services to be provided during the Chapter 11 Case.

## III.   RELIEF REQUESTED

45.     By this Application, the Debtor respectfully requests the entry of an Order pursuant to sections 327(a), 328, and 329 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Bankruptcy Rules 2014-1 and 2016-1 authorizing it to employ and retain Reed Smith as its counsel under a general security retainer to perform legal services during this Chapter 11 Case. Pursuant to Local Bankruptcy Rule 2014-1(b), the Debtor requests that this Court approve this Application as of the Petition Date to compensate Reed Smith for work performed after the Petition Date, but prior to the entry of the order approving this Application.  *See In re United Companies Financial Corp.*, 241 B.R. 521, 526 (Bankr. D.Del. 1999) (MFW) ("In fact, the UST recognizes that in large chapter 11 cases, given the press of urgent matters to be determined in the early days of the chapter 11 proceeding, the preparation and filing of retention applications for all professionals may be delayed.  If such applications are filed within *30 days* of the petition date, therefore, the UST will, not ordinarily object.") (emphasis added).

## IV.   BASIS FOR RELIEF REQUESTED

46.     The Debtor seeks to retain Reed Smith as its counsel because of Reed Smith's extensive experience in cases under chapter 11 of the Bankruptcy Code and, in particular, its

experience representing investment funds in chapter 11 bankruptcies and RRLS in certain recent prepetition litigation.  Accordingly, the Debtor believes that Reed Smith is qualified to represent it in this Chapter 11 Case in an efficient and timely manner.

47.     Prior to the Petition Date, the Debtor retained Reed Smith to provide legal services to the Debtor in connection with, *inter alia*, matters concerning the Debtor's financial difficulties and the filing of this Chapter 11 Case.  Reed Smith has become generally familiar with the Debtor's legal disputes, including issues that may arise during the Chapter 11 Case.  Reed Smith has assisted the Debtor in connection with filing this Chapter 11 Case, including the preparation and amendment of schedules and other documents necessary to facilitate the proper administration of this Chapter 11 Case.

48.     The professional services that Reed Smith, as general bankruptcy counsel, is expected to render to the Debtor include, but shall not be limited to, the following:

(a)     to advise the Debtor of its rights, powers and duties as debtor in possession;

(b)     to take all appropriate action to assist the Debtor in the protection and preservation of the value of the Debtor's estate;

(c)     to assist the Debtor in negotiating a fully or partially consensual resolution of this Chapter 11 Case;

(d)     to prepare on behalf of the Debtor all appropriate motions, applications, proposed orders, a disclosure statement, a chapter 11 plan, and other papers in connection with the administration of the Debtor's estate;

(e)     to assist the Debtors' in claims administration;  and

(f)     to perform all other appropriate legal services as general bankruptcy counsel in connection with the Chapter 11 Case including, where not handled by special litigation counsel, preparation of pleadings and prosecution of actions against third parties arising under the Bankruptcy Code or otherwise.

49.     The hourly rates of Reed Smith's attorneys and paralegals are set forth in the Declaration.  Reed Smith has informed the Debtor that the hourly rates set forth in the Declaration

are standard rates that Reed Smith charges its bankruptcy and non-bankruptcy clients, except that Reed Smith has agreed to provide the Debtor a 15% discount on Reed Smith's hourly rates consistent with the rates charged to RRLS, beginning in 2018, in connection with the *Huizenga*-related litigation.  These rates are set at a level designed to compensate fairly Reed Smith for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.  It is Reed Smith's general policy to charge both its bankruptcy and non-bankruptcy clients for all out of pocket expenses incurred in connection with each client's case.  The expenses generally charged to clients include, without limitation, teleconference charges, mail and express mail charges, special or hand delivery charges, photocopying charges, travel expenses, computerized research, transcription costs, as well as non-ordinary overhead expenses such as necessary secretarial and other overtime and late night transportation.  Reed Smith will charge the Debtor's estate for these expenses in a manner and at rates consistent with charges made generally to Reed Smith's bankruptcy and non-bankruptcy clients.

50.     During the course of this Chapter 11 Case, Reed Smith has informed the Debtor that it intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and orders of the Court.

51.     The general security retainer is appropriate for several reasons in this Chapter 11 Case.  First, these types of retainer agreements reflect normal business terms in the marketplace.  *See In re Insilco Technologies, Inc.,* 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("the practice [of receiving security retainers] in this district has been engaged in since at least the early 1990's").  Second, Reed Smith and the Debtor are sophisticated business entities that have negotiated the retainer at arms' length.  The retainer secures Reed Smith's fees and expenses for work performed

in connection with the Chapter 11 Case.  Thus, under the standards articulated by this Court in *Insilco*, the facts and circumstances of this Chapter 11 Case support the approval of the security retainer requested herein.

**Reed Smith Is Disinterested**

52.    The Debtor understands that except as otherwise set forth in the Declaration:

(a)    Neither Reed Smith nor any attorney at Reed Smith holds or represents an interest adverse to the Debtor's estate;

(b)    Neither Reed Smith nor any attorney at Reed Smith is or was a creditor or an insider of the Debtor;

(c)    Neither Reed Smith nor any attorney at Reed Smith is or was, within two years before the Petition Date, a director, officer or employee of the Debtor; and

(d)    Reed Smith does not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

53.    To check and clear potential conflicts of interest in this Chapter 11 Case, Reed Smith researched its client database to determine whether Reed Smith has any "connections" with the following:  (a) the Debtor; (b) the Debtor's managing member; (c) the manager of the Debtor's managing member; (d) the Debtor's officer; (e) equity holders with 5% or more of the equity in the Debtor; (f) co-defendants in prepetition litigation; (g) the Debtor's prepetition (and potential post-petition) lender; (h) adverse parties to prepetition litigation; (i) co-defendants in prepetition litigation; (j) creditors on the Debtor's list of its twenty largest unsecured creditors filed pursuant to Bankruptcy Rule 1007(d); (k) prepetition replacement counsel; (l) members of the office of the United States Trustee; (m) Bankruptcy Judges of the District of Delaware, and (n) other professionals retained by the Debtor in the Chapter 11 Case.  Attached as <u>Exhibit A</u> to the Declaration is a list of such individuals and entities.

54.     To the best of the Debtor's knowledge, and except as set forth herein and in the Declaration (including Exhibit B thereto), Reed Smith has not during the three (3) years prior to the Petition Date represented the Debtor, its creditors, equity security holders of more than 5%, or any other person or entity listed in Exhibit A to the Declaration in any matters, related or unrelated to, the Debtor or its estate.  Reed Smith will continue to represent certain creditors or co-defendants in matters outside of the Chapter 11 Case.

55.     Prior to the Petition Date, Reed Smith provided the following litigation-related services to the Debtor and certain co-defendants in prepetition litigation (some of which is ongoing):

56.     *A.R. Thane Ritchie et al., Petitioners v. Huizenga Managers Fund, LLC*, *Respondent*, Case No. 17-610 (Supreme Court of United States):  In June 2017, Reed Smith began representing RRLS, its managing member Ritchie Partners, RCM, and Mr. Ritchie in connection with their Petition for Certiorari to the United States Supreme Court with respect to the August 2015 judgment in *Huizenga Managers Fund, LLC v. A.R. Thane Ritchie, et al.*, Case No. 07 CH 09626 (Cir. Ct. Cook County, Ill.).  The Petition asserted error of the Illinois Appellate and Illinois Supreme Court in failing to give full faith and credit to the judgment of the Delaware Supreme Court on a critical issue of Delaware law.  The petition for certiorari has been denied, and therefore, this matter has been concluded.

57.     *Huizenga Managers Fund, LLC v. A.R. Thane Ritchie, et al.*, Case No. 07 CH 09626 (Cir. Ct. Cook County, Ill.):  On September 11, 2017, Reed Smith began representing RRLS, its managing member Ritchie Partners, and RCM in post-judgment proceedings.  The main issues are:  (i) whether the trial court should have entered judgment against Ritchie Partners, RCM and Mr. Ritchie based on the Illinois Appellate Court's Mandate from the first appeal in this case; and

(ii) whether and to what extent the parties are entitled to their attorneys' fees and costs incurred during the litigation of this case.  Issue (i) is currently on appeal to the Illinois Appellate Court, and Reed Smith is co-counsel representing the above entities in the appeal.  On July 24, 2018, the Illinois Appellate Court entered three separate orders in this case.  First, the court entered an Order denying Huizenga's motion for an order, *inter alia*, dismissing the appeal.  Second, the court entered an Order denying Mr. Richie's motion for sanctions against Huizenga.  Finally, the court entered its Order denying RRLS's motion to dismiss its appeal.  Issue (ii) is pending before the trial court.

58.    *A.R. Thane Ritchie, et al. v. Arch Specialty Insurance Company and Continental Casualty Company*, Case No. 15 CH 13480 (Cir. Ct. Cook County, Ill.):  Two of the insurers for RRLS, Ritchie Partners, RCM and Mr. Ritchie contend that they are not obligated to insure these parties for the judgments entered in the above case.  On September 10, 2015, the insureds filed this lawsuit against their insurers to obtain an order requiring the insurers to fund an appeal bond for the appeal of the above case.  Reed Smith represents all of the plaintiffs in this lawsuit.  The trial court ruled in favor of the plaintiffs and ordered the insurers to fund the $11,150,000 appeal bond.  The Illinois Appellate Court reversed that order on appeal, but the surety was required to pay the full amount of the bond to Huizenga after the appeal of the above case.  The insurers are seeking to recover the amount of the appeal bond from the plaintiffs.  The plaintiffs have filed an amended complaint alleging that the insurers acted in bad faith by not attempting to settle the above case within policy limits.  The case is pending in Cook County Circuit Court.

59.    *Huizenga Managers Fund, LLC v. A.R. Thane Ritchie*, et al., Case No. 17 L 009244 (Cir. Ct. Cook County, Ill.):  On September 26, 2017, Huizenga filed a lawsuit against RRLS, Ritchie Partners, RCM, Mr. Ritchie and the insurers alleging fraud and conspiracy to commit fraud.

Huizenga alleged that the defendants misrepresented that they had obtained an "irrevocable" appeal bond for the appeal of the judgment to induce Huizenga to agree to a stay of enforcement of that judgment pending the appeal.   Huizenga alleged that representation was false because the defendants did not disclose the existence of a "side agreement" between them in which they allegedly agreed that the insurers could attempt to "cancel" the bond after it was entered.   Huizenga alleged that it would not have agreed to a stay of enforcement had it known of the "side agreement" and that it has lost the ability to collect from the defendants because RRLS now is insolvent. Huizenga sought damages in the amount of the judgment for the October 2005 Sale and the attorneys' fees it incurred in disputing the insurers' attempts to convince the Illinois courts to "cancel" the appeal bond.

60.     On January 16, 2018, Huizenga filed a First Amended Complaint, adding a count for fraudulent conveyance and adding Ritchie Capital Management SEZC, Ltd. ("RCM Ltd.") as a defendant.   The new count alleges that RCM assigned subadvisory rights to RCM Ltd. in May 2015 to place the "asset" of subadvisory rights beyond Huizenga's ability to collect.   RRLS, Ritchie Partners, RCM and the insurers filed motions to dismiss the appeal bond counts.   RCM filed a motion to dismiss the fraudulent conveyance counts.   RCM Ltd. filed a motion to dismiss the fraudulent conveyance counts for lack of personal jurisdiction.   Mr. Ritchie filed a motion to quash service of process.

61.     On May 4, 2018, the trial court granted the defendants' substantive (non-jurisdictional) motions to dismiss without prejudice and ordered Huizenga to replead in a Second Amended Complaint if it wished to do so by May 25, 2018.   Granting these motions mooted the motions filed by RCM Ltd. and Mr. Ritchie on jurisdictional/service of process grounds.   On May 25, 2018, Huizenga filed a Second Amended Complaint.   The insurers have filed a motion to

dismiss the counts against them in the Second Amended Complaint.  RRLS filed a motion to stay based on the pending Chapter 11 Case.

62.    Reed Smith represented RRLS, Ritchie Partners, RCM, RCM Ltd. and Mr. Ritchie in this case until June 12, 2018.  On that date, the law firm of Swanson, Martin & Bell, LLP substituted in as counsel for RRLS, Ritchie Partners and RCM.

63.    *A.R. Thane Ritchie, et al. v. Huizenga Managers Fund, LLC*, C.A. No. N17C-05-598 MMJ CCLD (Del. Super. Ct.):  Reed Smith is co-counsel for RRLS, Ritchie Partners, RCM, and Mr. Ritchie in this case, which was filed in the Delaware Superior Court on May 24, 2017.  The plaintiffs seek indemnity under Huizenga's subscription agreement relating to the judgments relating to the August 2005 Sale and the October 2005 Sale that Huizenga obtained against the plaintiffs in the Illinois lawsuit.  This indemnity suit alleges that Huizenga violated several representations and warranties in the subscription agreement by asserting a Delaware Blue Sky Law claim in the Illinois court based on alleged omissions of fact it represented and warranted it would not and did not rely on in making its investments with RRLS.  This suit also alleges that Huizenga pursued and obtained a judgment against Mr. Ritchie, Ritchie Partners, and RCM in the absence of fraud or gross negligence in violation of a covenant not to do so. Huizenga filed a motion to dismiss or stay.  On December 21, 2017, the Delaware Superior Court stayed the case pending resolution of the Illinois lawsuit.

64.    The co-defendants in the foregoing litigation assert or may assert an indemnification claim (pursuant to RRLS' Third Amended and Restated Operating Agreement dated November 1, 2005) against the Debtor with respect to any liability or expenses in such litigation.[6]

---

[6] The Debtor reserves all rights with respect to any claims against the Debtor, including those that may be asserted by the co-defendants.  In any event, should one or more of the co-defendants assert claims against the Debtor, Reed Smith would not represent such party in connection with those claims, and the creditors'

65.     Some or all of the claims in the foregoing lawsuits may be subject to the injunction imposed by the automatic stay.

66.     With respect to the litigation described above, Reed Smith received $2,271,968.54 prior to the Petition Date, which amount was financed by Ritchie Multi-Strategy Global Trading, Ltd. pursuant to prepetition litigation funding.[7]

67.     As of the Petition Date, Reed Smith was owed $250,913.85 with respect to certain of the lawsuits described above.  Reed Smith reviewed the invoices and separated out fees applying solely to RRLS and solely to clients other than RRLS.  Reed Smith also allocated one-fourth of the outstanding amount owed with respect to such prepetition litigation funding to RRLS where work applied equally to RRLS, RCM, Ritchie Partners and Mr. Ritchie.  Consequently, as of the Petition Date, RRLS owed $30,351.81 of the $250,913.85 to Reed Smith.  Reed Smith agrees to waive such fees and expenses as a condition of its employment as the Debtor's bankruptcy counsel.[8]  The remaining $220,562.04 owed to Reed Smith as of the Petition Date will be paid by the non-debtor co-defendants.

68.     In or around December 2017, Kurt F. Gwynne of Reed Smith was retained (and serves) as an expert witness regarding the rights of a secured creditor under Articles 8 and 9 of the Delaware Uniform Commercial Code for RCM, Rhone Holdings II. Ltd., Ritchie Special Credit Investments, Ltd., Yorkville Investments I, LLC, and RCM Ltd., in certain unrelated litigation

---

committee or conflicts counsel may represent the Debtor (or plan administrator/litigation trustee) with respect to any such claims.

[7] The prepetition litigation financing was supposed to be secured by the Debtor's litigation claims. However, Ritchie Multi-Strategy Global Trading, Ltd. did not file a financing statement until on or about June 21, 2018.  Thus, the Debtor believes that the related security interest is avoidable.

[8] "A disinterested person is someone who 'is not a creditor, an equity security holder, or an insider.' 11 U.S.C. § 101(14)(a)."  *In re Fleming Cos.*, 305 B.R. 389, 393 (Bankr. D. Del. 2004).

against Dentons relating to the Petters Group Worldwide, LLC and Polaroid Corporation *et al.* bankruptcy cases.

30.     Reed Smith has represented McGuire Woods LLP in matters unrelated to the Debtor and the Chapter 11 Case.

31.     Reed Smith has worked or continues to work with Duff & Phelps (and Kroll) and its principals and employees in multiple unrelated matters, both as counsel to Duff & Phelps and also where Duff & Phelps has been engaged by Reed Smith in respect of litigation support, expert testimony or as a financial advisor on behalf of its clients.  As an example, Kurt F. Gwynne of Reed Smith represented Aramid Entertainment Fund Ltd. ("AEF"), a chapter 11 debtor in possession, in the United States Bankruptcy Court for the Southern District of New York.  Geoffrey Varga of Duff & Phelps served as joint voluntary liquidator and plan trustee for AEF.  In addition, Reed Smith continues to represent Mr. Varga in his capacity as the Official Liquidator of Lancelot Investors Fund Ltd. ("Lancelot Offshore") in connection with Lancelot Offshore's chapter 7 bankruptcy case pending in the United States Bankruptcy Court for the Northern District of Illinois.  Further, Reed Smith previously represented (i) Mr. Varga and Mark Longbottom (also of Duff & Phelps) in their capacities as Joint Official Liquidators of Palm Beach Offshore, Ltd. and Palm Beach Offshore II, Ltd.; and (ii) Mr. Varga, in his capacity as Liquidating Trust Monitor, in each case in connection with the jointly administered cases captioned *In re: Palm Beach Finance Partners, L.P., et al.*, (Case No.: 09-36379-PGJ) pending in the United States Bankruptcy Court Southern District of Florida, West Palm Beach Division.

32.     Accordingly, to the best of Debtor's knowledge, Reed Smith does not hold or represent any interest adverse to the Debtor's estate and Reed Smith is a "disinterested person" as that phrase is defined in Section 101(14) of the Bankruptcy Code.

### Notice

33.     Pursuant to Bankruptcy Rule 2002 and Local Bankruptcy Rule 2002-1(b), notice of this Application has been given to (a) the United States Trustee; (b) the official committee of unsecured creditors (and any counsel thereto), (c) the Debtor's twenty largest unsecured creditors as identified pursuant to Bankruptcy Rule 1007(d); and (d) any parties that have filed appearances and requested notice in this Chapter 11 Case. In light of the nature of the relief requested in this Application, the Debtor submits that no other or further notice is required.

### No Prior Request

34.     No previous request for the relief sought in this Application has been made to this Court.

WHEREFORE, the Debtor respectfully requests that this Court enter an order in the form attached hereto as Exhibit 2 authorizing the Debtor to employ Reed Smith to represent the Debtor as counsel in this Chapter 11 Case on an hourly rate basis, plus properly reimbursable expenses, as an expense of administration, subject to approval by this Court.

Dated: July 27, 2018

Respectfully submitted,

RITCHIE PARTNERS, LLC, as Managing
Member of Ritchie Risk-Linked Strategies, L.L.C.

By: _____

Michael Cilento
Chief Operating Officer