## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RITCHIE RISK-LINKED STRATEGIES, L.L.C,[1] | Case No. 18-11555 (KJC) |
| Debtor. | **Objections Due: August 16, 2018, at 4:00 p.m. (Eastern)**<br>**Hearing Date:  September 4, 2018, at 1:30 p.m. (Eastern)** |

### APPLICATION OF THE DEBTOR IN POSSESSION FOR AN ORDER AUTHORIZING THE DEBTOR TO (I) EMPLOY AND RETAIN DUFF & PHELPS, LLC AND (II) DESIGNATE GEOFFREY VARGA AS CHIEF RESTRUCTURING OFFICER *NUNC PRO TUNC* TO JULY 24, 2018

Ritchie Risk-Linked Strategies, L.L.C. ("RRLS" or the "Debtor") respectfully submits this application (the "Application") for entry of an Order (in substantially the form attached as Exhibit A) pursuant to sections 105(a) and 363 of the Bankruptcy Code and Rule 2016 of the Bankruptcy Rules: (i) authorizing the Debtor to retain and employ Duff & Phelps, LLC ("D&P") and (ii) designating Geoffrey Varga ("Mr. Varga") of D&P as Chief Restructuring Officer ("CRO") to the Debtor, effective as of July 24, 2018, the date of the CRO Engagement Letter (as defined herein).  In support of the Application, the Debtor relies upon and incorporates by reference the Unsworn Declaration of Geoffrey Varga in Support of the Application of the Debtor in Possession for an Order Authorizing the Debtor to (I) Employ and Retain Duff & Phelps, LLC and (II) Designate Geoffrey Varga as Chief Restructuring Officer *Nunc Pro Tunc* to July 24, 2018 (the "Declaration"), which is attached as Exhibit B, and incorporated herein by reference.  In further support of this Application, the Debtor states as follows:

---

[1] The last four digits of the Debtor's tax identification number are 0458.

I.       **JURISDICTION AND VENUE**

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.       Venue of this case and the Application are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The statutory and other predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code and Federal Rule 2016.

II.      **PROCEDURAL BACKGROUND**

4.       On June 28, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case (the "Chapter 11 Case").

5.       The Debtor continues to manage its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.       To date, no creditors' committee has been appointed in the Chapter 11 Case.

III.     **QUALIFICATIONS OF D&P AND MR. VARGA**

7.       D&P is a global advisor in the areas of valuation, corporate finance, investigations, disputes, cyber security, and compliance and regulatory matters.  D&P works with clients across diverse sectors, mitigating risk to assets, operations and people.  Following the recent acquisition of Kroll, D&P has nearly 3,500 professionals in 28 countries around the world.

8.       D&P also has considerable experience performing forensic financial analysis, fraudulent conveyance and solvency analysis and other financial advisory related services.  D&P has provided such services in bankruptcy proceedings in which D&P was retained, including (without limitation) those matters listed below.

9.      Mr. Varga is a Managing Director in D&P's Governance, Risk, Investigations and Disputes business unit and the head of D&P's Offshore Restructuring practice.  He assumed this role in January 2015 following D&P's acquisition of Kinetic Partners, where he was previously the global head of Kinetic Partner's Corporate Recovery and Restructuring practice, having built the practice from its inception in 2005.  Prior to joining Kinetic Partners, he was a Vice President within PwC's Business Recovery Services Group in Calgary, Alberta, Canada.

10.     Mr. Varga is a Canadian Chartered Accountant (since 1994) and holds a Canadian Chartered Insolvency & Restructuring Professional designation, which he earned in 2004.  He has over 22 years of professional experience in insolvency, corporate recovery and restructuring including, in the last 12 years, liquidating multiple distressed or insolvent offshore and onshore funds and asset management structures.  The engagements Mr. Varga has managed often concern entities and/or assets domiciled in jurisdictions such as (a) the Caribbean (the Cayman Islands, the Bahamas and the British Virgin Islands); (b) the United States; and (c) Europe.  He has been responsible for monetizing assets, including real estate, aircraft, private equity investments, marketable securities, structured products, hedge fund and private equity fund interests, and litigation.  Mr. Varga's engagements also have involved the prosecution or defense of large and complex litigation.

11.     Engagements on which Mr. Varga has been actively involved include, but are not limited to,  Aramid Entertainment Fund, Ltd. *et al.*; Soundview Elite Ltd. *et al*; Palm Beach Offshore Ltd. / Palm Beach Offshore II Ltd. / Lancelot Investors Fund; Bear Stearns High-Grade Structured Credit Strategies (Overseas) Ltd. and Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd.; Spectrum Galaxy Fund Ltd.; Himelsein Mandel Offshore Fund; Commonwealth Funds / Sand Springs Funds; Mariah Re Ltd.; Saad Investment

Finance Company (No. 5) Limited; Mezzanine Financing Ltd. / Consistent Return Ltd. / Silverback Fund Ltd. / Nauticus Fund Ltd.; Ariel Fund Limited; Tarchon Fund of Funds SPC; Security Capital Ltd.; ThreeAM SPC Ltd.; Parmalat Capital Finance Limited; and SPhinX Strategy Fund.

12.     Given D&P's and Mr. Varga's substantial experience, the Debtor retained D&P for the provision of CRO and related services to the Debtor pursuant to that certain engagement letter dated July 24, 2018 between D&P and the Debtor (the "<u>CRO Engagement Letter</u>"), a copy of which is attached as <u>Exhibit C</u> and incorporated herein by reference.[2]

## IV.     TERMS OF ENGAGEMENT

13.     Pursuant to the CRO Engagement Letter, Mr. Varga and D&P will provide the Debtor with the following services, as required:

(a)     Conduct/oversee bankruptcy preparation and filing activities, including: execution of relevant documents, retaining of all necessary financial/legal advisors, attending and appearing on behalf of the Debtor at bankruptcy hearings and 341 meetings of creditors and related ancillary bankruptcy matters;

(b)     Prepare and reconcile budgets and 13-week cash flows;

(c)     Assist with financial reporting to the Bankruptcy Court and any lenders;

(d)     Develop, along with legal and restructuring professionals, a plan of reorganization and drive the process of exiting the Debtor from bankruptcy;

(e)     Manage (with assistance of counsel) litigation impacting the Debtor;

(f)     Coordinate activities and assist in communication with outside constituents; and

---

[2] The terms of the CRO Engagement Letter summarized in this Application are qualified in their entirety by the express terms of the CRO Engagement Letter.

      (g)      Assist with all other matters as may be requested and that fall within D&P's expertise and that are mutually agreed upon between the Debtor and D&P.

Exh. C at 1-2.

14.      Pursuant to the CRO Engagement Letter, the Debtor acknowledged and agreed that Mr. Varga, in his capacity as CRO (and not in his personal capacity), shall, in his sole discretion, have full decision-making authority for and on behalf of the Debtor with respect to all matters in the Chapter 11 Case, including without limitation, decisions regarding litigation strategy (including with respect to the assertion, settlement or prosecution of claims and causes of action that are the property of the Debtor's estate), and the development, terms and pursuit of confirmation, of a plan of reorganization. *See* Exh. C at 2.[3]

15.      The Debtor and D&P intend that all of the services that Mr. Varga and other D&P personnel that Mr. Varga may select to assist him in carrying out his CRO duties and responsibilities (the "Retained Staff"), will be: (a) appropriately directed by the CRO so as to avoid duplicative efforts among the other professionals retained in this Chapter 11 Case; and (b) performed in accordance with applicable standards of the profession.

16.      Section 7 of the General Terms and Conditions annexed to the CRO Engagement Letter and incorporated therein contains indemnification provisions with respect to D&P's and Mr. Varga's services (the "Indemnification Provisions").  In particular, the Debtor agreed that it shall indemnify, hold harmless, and defend D&P and its affiliates and its and their partners, directors, officers, employees and agents (collectively, "D&P Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of D&P that is the subject of the CRO Engagement Letter except to the extent

---

[3] The Debtor is an LLC investment fund.  As is common with such funds, the Debtor has been managed by a managing member (Richie Partners, L.L.C.) and the manager of Ritchie Partners, L.L.C. (Ritchie Capital Management, L.L.C.).  The Debtor does not have a board of directors or officers.

finally determined by a court of competent jurisdiction to have resulted from the D&P Party's own willful misconduct, gross negligence or fraudulent behavior. *See* Exh. C, General Terms and Conditions § 7.

17. Further, the CRO Engagement Letter provides that D&P employees serving as directors or officers of the Debtor (*i.e.*, Mr. Varga in his capacity as CRO) will receive the benefit of the most favorable indemnification provisions provided by the Debtor to its directors, officers and any equivalently placed employees, whether under the Debtor's charter or by-laws, by contract, or otherwise. *See* Exh. C, General Terms and Conditions § 7.

18. The Debtor and D&P negotiated, at arms' length and in good faith, the Indemnification Provisions (and all other terms of the CRO Engagement Letter). D&P and the Debtor believe that the Indemnification Provisions are comparable to those indemnification provisions generally obtained by crisis management firms for comparable engagements, both in and out of court. The Debtor respectfully submits that the Indemnification Provisions contained in the CRO Engagement Letter, viewed in conjunction with the other terms of D&P's proposed retention, are reasonable and in the best interest of the Debtor, its estate and creditors in light of the fact that the Debtor requires D&P's services to prosecute this Chapter 11 Case.

## V.    PROFESSIONAL COMPENSATION

19. The agreement of D&P and Mr. Varga to be engaged by the Debtor is conditioned upon D&P's customary terms and conditions of employment, including the compensation arrangement set forth in the CRO Engagement Letter (the "Fee and Expense Structure") as summarized below.

20.    The standard hourly rates charged for professionals anticipated to be assigned to this Chapter 11 Case are as follows[4]:

| Engagement Staff | Hourly Rate |
|---|---|
| Geoffrey Varga (CRO) | $895 |
| Managing Director | $695 - $895 |
| Director or Vice President | $495 - $695 |
| Associate to Senior Associate | $225 - $450 |
| Analyst/Administrator | $125 - $225 |

Exh. C at 3.

21.    With respect to this engagement, D&P has agreed that a cap of $35,000.00 will apply to time billed in any calendar month.  Exh. C at 3.

22.    In addition to any fees payable to D&P, the Debtor shall reimburse D&P for all reasonable out-of-pocket expenses incurred in connection with the engagement.  Such out-of-pocket expenses shall include, but are not limited to, all reasonable travel expenses, lodging and meals, pre-approved computer and research charges, and any reasonable attorneys' fees.  Exh. C at 3.

23.    Consistent with the scope of services to be provided by D&P under the CRO Engagement Letter, the Debtor and D&P negotiated and agreed upon the Fee and Expense Structure described above.  The Debtor believes that the Fee and Expense Structure is reasonable, designed to fairly compensate D&P for the work performed by Mr. Varga and the Retained Staff, and consistent with D&P's normal and customary billing levels for a case of similar size and complexity, both in and out-of-court, in connection with the rendering of similar

---

[4] D&P's rates are subject to annual review and adjustment.  D&P will inform the Debtor and the U.S. Trustee to the extent any such adjustments occur during the pendency of this Chapter 11 Case.

services to be provided to the Debtor.  The Fee and Expense Structure is also reasonable in the market place when compared to comparable advisory firms rendering similar services.

24.    D&P will submit monthly invoices to the Debtor, and the Debtor requests authority to pay, in the ordinary course of business, all reasonable amounts invoiced by D&P for fees and expenses.

25.    Because D&P is not being employed as a professional under section 327 of the Bankruptcy Code, D&P requests that it not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  However, to insure transparency, D&P will file with the Court, and provide reports of compensation earned and expenses incurred on a quarterly basis ("Compensation Reports") to the U.S. Trustee and counsel to any statutory committee appointed in this Chapter 11 Case (the "Notice Parties").  D&P will submit Compensation Reports within thirty (30) days of the end of each three-month quarterly period.  Such reports shall summarize the services provided and identify the compensation earned and expenses incurred by D&P personnel.  The Notice Parties shall have twenty-one (21) days after service of each Compensation Report to object to any fees or expenses paid to D&P.  Such compensation and expenses will be subject to Court review if any such objection is filed and D&P and the objector are unable to resolve the objection.  Pursuant to the foregoing procedure, D&P anticipates that it will file its first Compensation Report by October 30, 2018, for the period covering the Petition Date through September 30, 2018.

26.    D&P may from time to time add or remove staff and D&P will file monthly staffing reports that will reflect the Retained Personnel that provided services during the prior month ("Staffing Reports").  Staffing Reports will include the names of all Retained Staff involved in this Chapter 11 Case and each individual's hourly billing rate.  The Notice Parties

shall have twenty-one (21) days after service of each Staffing Report to object.  The Staffing Reports and D&P's staffing decisions will be subject to review by the Court in the event an objection is filed.  Pursuant to the foregoing procedure, D&P anticipates that it file its first Staffing Report by September 30, 2018, for the period covering D&P's retention through August 31, 2018.

27.    To ensure payment of D&P's fees and expenses, D&P shall receive, upon the Court's approval of this Application, a $50,000 security retainer (the "Retainer") that, pursuant to the terms and conditions of the CRO Engagement Letter, shall be used to cover any outstanding unpaid invoices for services rendered upon conclusion of the engagement.

28.    Security retainers such as the Retainer are appropriate in this Chapter 11 Case for several reasons.  *See In re Insilco Tech., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) (Carey, J.) ("Factors to be considered, include . . . whether terms of an engagement agreement reflect normal business terms in the marketplace; . . . the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation[] [and] . . . whether the retention, as proposed, is in the best interests of the estate[] . . ."); *see also In re CTC Commc'ns Group, Inc.*, Case No. 02-12873 (PJW) (Bankr. D. Del. May 22, 2003), Hr'g Tr. 43, May 22, 2003 ("I agree and adopt wholeheartedly Judge Carey's decision in the Insilco case.").

29.    The receipt of such a Retainer is a normal business term in the marketplace.  *See In re Insilco Tech., Inc.*, 291 B.R. at 634 ("[I]t is not disputed that the taking of [security] retainers is a practice now common in the market place.").  Both D&P and the Debtor are sophisticated business entities that have negotiated the CRO Engagement Letter and the Retainer at arm's length.  Thus, under the relevant factors articulated in *In re Insilco Tech., Inc.*, and

adopted *In re CTC Commc'ns Group, Inc.*, the facts and circumstances of this Chapter 11 Case support the approval of the Retainer.

## VI.    D&P'S CONNECTIONS WITH THE DEBTOR AND PARTIES IN INTEREST

30.    The Debtor does not believe that D&P is a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code.  However, D&P has provided information with respect to its "connections" with the Debtor, the Debtor's other professionals, the Debtor's creditors, and other parties in interest in this Chapter 11 Case as more specifically described in this Application and in the Declaration.

31.    To the best of the Debtor's knowledge, and as disclosed herein and in the Declaration, (i) D&P holds or represents no interest adverse to the Debtor and is estate; and (ii) D&P has no connection to the Debtor, its creditors or its related parties, and other professionals of the Debtor in this Chapter 11 Case except as may be disclosed in this Application and in the Declaration.  Moreover, the retention and employment of D&P is necessary and in the best interests of the Debtor, its estate, and other parties in interest.

32.    D&P has disclosed to the Debtor that Mr. Varga currently serves as the Official Liquidator of Lancelot Investors Fund Ltd. ("Lancelot Offshore") in connection with Lancelot Offshore's chapter 7 bankruptcy case, pending in the United States Bankruptcy Court for the Northern District of Illinois.  Ritchie Capital Management, L.L.C., Ritchie Capital Management SEZC Ltd., and other affiliated entities (but not the Debtor) are adverse to the Lancelot Offshore estate and have competing interests with Lancelot in the Chapter 11 bankruptcy proceeding of Petters Company, Inc. and its affiliated debtors, pending in the United States Bankruptcy Court for the District of Minnesota.

33.    D&P also disclosed to the Debtor that D&P (and Kroll) and its principals and employees (including Mr. Varga) have worked or continues to work with the Debtor's proposed

bankruptcy counsel, Reed Smith LLP ("Reed Smith"), in multiple unrelated matters. Those matters involve D&P's retention by Reed Smith in respect of litigation support, expert testimony or as a financial advisor on behalf of its clients and matters where Reed Smith served as counsel to D&P or Mr. Varga. By way of illustration, Kurt F. Gwynne of Reed Smith represented Aramid Entertainment Fund Ltd. ("AEF"), a chapter 11 debtor in possession and now reorganized debtor, in the United States Bankruptcy Court for the Southern District of New York. Mr. Varga served as joint voluntary liquidator and plan trustee for AEF and the "Aramid Distribution Trust." Reed Smith represented AEF and represents the Aramid Distribution Trust.

34.     In addition, Mr. Varga is represented by Reed Smith in his capacity as the Official Liquidator of Lancelot Offshore in connection with its chapter 7 bankruptcy discussed above. Further, (i) Mr. Varga and Mark Longbottom (also of D&P) in their capacities as Joint Official Liquidators of Palm Beach Offshore, Ltd. and Palm Beach Offshore II, Ltd.; and (ii) Mr. Varga, in his capacity as Liquidating Trust Monitor, had previously retained Reed Smith in connection with the jointly administered cases captioned *In re: Palm Beach Finance Partners, L.P., et al.*, (Case No.: 09-36379-PGJ) pending in the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division. Reed Smith does not currently represent Mr. Varga in the *Palm Beach* matters.

35.     D&P and its affiliates may have previously served, or currently serve, and will likely serve in the future, certain of the Debtor's creditors, affiliates of the Debtor's creditors, professionals, and other parties in interest in matters unrelated to the Debtor or this Chapter 11 Case, and has provided related information in the Declaration. D&P continues to work with/for creditor McGuire Woods LLP, providing litigation support and expert testimony in connection with matters unrelated to the Debtor or this Chapter 11 Case.

36.     The Debtor does not believe that D&P's past or present provision of services for other parties in interest in unrelated matters presents a conflict of interest under the circumstances of this Chapter 11 Case or diminish D&P's ability to serve the Debtor effectively in this Chapter 11 Case.

37.     D&P will periodically review its files during the pendency of this Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances exist or arise.  To the extent that D&P discovers any new relevant facts or relationships bearing on the matters described herein during the period of D&P's retention, D&P will use reasonable efforts to promptly file a supplemental declaration.

38.     As stated above, the Debtor does not believe that D&P holds or represents any interest adverse to the Debtor's estate.  Accordingly, the Debtor submits that the retention of D&P is in the best interests of the Debtor, its estate, and its creditors and should be approved by the Court.

## VII.    RELIEF REQUESTED

39.     Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Rule 2016 of the Bankruptcy Rules, the Debtor respectfully requests that the Court enter an Order, substantially in the form attached hereto as <u>Exhibit A</u>: (a) approving the employment and retention of D&P; and (b) appointing Mr. Varga as CRO to the Debtor *nunc pro tunc* to July 24, 2018.

## VIII.   BASIS FOR RELIEF REQUESTED

40.     The Debtor submits that the retention of a chief restructuring officer and other additional personnel is proper under section 363 of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that the trustee or debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of

the estate." 11 U.S.C. § 363(b)(1).  Section 363 of the Bankruptcy Code provides that transactions not in the ordinary course of business must be approved by court order.  Under applicable case law, in this and other jurisdictions, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

41.     The retention of D&P and Mr. Varga is a sound exercise of the Debtor's business judgment.  Mr. Varga has extensive experience as a senior officer and advisor for many distressed companies.  The Debtor believes that the CRO, in conjunction with the Retained Staff, will provide services that benefit the Debtor's estate and creditors.  In light of the foregoing, the Debtor believes that the retention of D&P and Mr. Varga is appropriate and in the best interests of the Debtor and its estate.

## Notice

42.     Pursuant to Bankruptcy Rule 2002 and Local Bankruptcy Rule 2002-1(b), notice of this Application has been given to (a) the United States Trustee; (b) the Debtor's twenty largest unsecured creditors as identified pursuant to Bankruptcy Rule 1007(d); and (c) any

parties that have filed appearances and requested notice in this Chapter 11 Case. In light of the nature of the relief requested in this Application, the Debtor submits that no other or further notice is required.

WHEREFORE, the Debtor respectfully request that the Court enter an Order, substantially in the form attached hereto as Exhibit A, (a) approving the employment and retention of D&P; (b) appointing Mr. Varga as CRO to the Debtor *nunc pro tunc* to July 24, 2018; and (c) granting such further relief to the Debtor as is appropriate.

Dated: July 30, 2018

Respectfully submitted,

RITCHIE PARTNERS, LLC, as Managing Member of Ritchie Risk-Linked Strategies, L.L.C.

By: _____

Michael Cilento
Chief Operating Officer