**EXHIBIT C**
**ENGAGEMENT LETTER**



July 24, 2018

Ritchie Risk-Linked Strategies, L.L.C.
200 Continental Drive
Newark, DE 19713

**PRIVILEGED AND CONFIDENTIAL**

**Re:  Agreement for the Provision of Chief Restructuring Officer and related services to Ritchie Risk-Linked Strategies, L.L.C. (the "Company")**

Dear Sirs:

This letter confirms the understanding and agreement (the "Agreement") with the Company, concerning the engagement of Duff & Phelps, LLC ("Duff & Phelps") for the provision of Chief Restructuring Officer ("CRO") and related services to the Company.  This Agreement reflects the terms and conditions of Duff & Phelps' engagement generally by the Company to provide CRO and related services to the Company.

The Company, by executing this letter, acknowledges and agrees to be responsible for the payment and other obligations to Duff & Phelps, and agrees to be bound by the acknowledgements made by it in this Agreement, subject to approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

**1.  Engagement**

Subject to (i) approval of the Bankruptcy Court, (ii) confirmation of resolution of approval from the Company's Managing Member, and (iii) confirmation of valid Directors and Officers Liability insurance policy covering the CRO, Duff and Phelps will provide Geoffrey Varga to serve as the Company's CRO, working with the Company and its other legal and financial advisors (as applicable).

Specifically, Mr. Varga and Duff & Phelps will assist the Company (as required) with the following:

(a)  Conduct/oversee bankruptcy preparation and filing activities, including: execution of relevant documents; retaining of all necessary financial/legal advisors, attending and appearing on behalf of the Debtors at bankruptcy hearings and 341 meetings of Creditors and related ancillary bankruptcy matters;

(b)   Preparation and reconciliation of budgets and 13-week cash flows;

(c)   Assisting with financial reporting to lenders and the Bankruptcy Court;

(d)   Develop, along with any/all legal and restructuring professionals, a Plan of Reorganization and drive the process of exiting the company from bankruptcy;

(e)   Manage (with the assistance of counsel) litigation impacting the Company;

(f)   Coordinate activities and assist in communication with outside constituents; and

(g)   Assist with such other matters as may be requested that fall within Duff & Phelps' expertise and that are mutually agreeable.

***In undertaking the above services, the Company acknowledges and agrees that Mr. Varga, in his capacity as CRO (and not in his personal capacity), shall, in his sole discretion, have full decision-making authority for and on behalf of the Company with respect to all matters in the Company's bankruptcy case, including without limitation, decisions regarding litigation strategy (including with respect to the assertion, settlement or prosecution of claims and causes of action that are property of the Company's estate), and the development, terms and pursuit of confirmation of a Plan of Reorganization.***

The Company acknowledges and agrees that Mr. Varga and Duff & Phelps shall not have any obligation or responsibility to provide accounting, audit, or to provide any valuation opinions, fairness opinions, or any advice or opinions with respect to solvency in connection with any restructuring transaction, but may provide advice with respect to the foregoing to the Company in connection with the performance of the financial advisory duties described above.  The Company confirms that it will rely on its own counsel, accountants, and similar expert advisors for legal, accounting, tax and other similar advice.

**2.  Staffing**

Geoffrey Varga will be the Managing Director responsible for the overall engagement. He will also assume the role as CRO to the Company.  In undertaking this role, he will be assisted by a staff of consultants at various levels, who have a wide range of skills and abilities related to this type of assignment.  We will periodically review the staffing levels to determine the proper mix for this assignment.  We will only use the necessary staff required to complete the requested planned tasks.

**3.  Term**

This Agreement shall commence (i) after the receipt of a copy of the Agreement executed by the Company accompanied by the retainer, (ii) confirmation of the Company's compliance with the requirements set forth in the first paragraph of the Engagement section above, and (iii) Bankruptcy Court approval of the retention of Geoffrey Varga as CRO and the terms of this Agreement.

It is acknowledged and agreed that either party may, in their sole discretion, terminate this agreement on fourteen (14) days' notice. Notwithstanding, termination of this agreement as described above, the Company shall be deemed to have determined that all services rendered under this Agreement to have been satisfactorily performed <u>unless</u> written, good faith notice of the contrary is delivered by the Company to Duff & Phelps by no later than fourteen (14) days after the effective date of termination.

4. **Professional fees and expenses**

Notwithstanding Mr. Varga's control/authority described in paragraph 1 above, it is acknowledged that the Company (through its board or managing member as the case may be) will retain authority to review and approve the fees and expenses of Mr. Varga and Duff & Phelps (with ultimate authority residing with the Bankruptcy Court).

The Company agrees that it shall be solely responsible for, and shall pay, the compensation and other amounts that are payable to Duff & Phelps hereunder and for certain other obligations specified herein (including without limitation the indemnification).

Mr. Varga's and Duff & Phelps' fees generally will be based on a time and expense basis, with our fees determined by the hours actually expended by each assigned professional. We recognize the need to maximize cost efficiency, and therefore, we endeavor to utilize staff at the level commensurate to the particular task while maintaining our standard of high quality work product. Our current hourly billing rates for this engagement are as follows:

| Grade of Staff | Hourly Rate |
| --- | --- |
| Geoffrey Varga (CRO) | US$895 |
| Managing Director | US$695 – US$895 |
| Director or Vice President | US$495 – US$695 |
| Associate to Senior Associate | US$225 – US$450 |
| Analyst/Administrator | US$125 – US$225 |

*(the above rates would be subject to annual review)*

With respect to this engagement, and unless otherwise ordered by the Bankruptcy Court, Duff & Phelps has agreed that a cap of $35,000 will apply to time billed in any calendar month.

The Company shall also reimburse Mr. Varga and Duff & Phelps for its reasonable and documented out-of-pocket expenses incurred in connection with the services to be provided under this Agreement. Out-of-pocket expenses shall include, but not be limited to, all reasonable travel expenses, lodging and meals, pre-approved computer and research charges, and any reasonable attorney fees. There will also be a general charge to cover general expenses for example postage, stationery, photocopying charges, telephone and fax costs, which cannot economically be recorded in respect of each specific case. These will be charged at the rate of US$5 per chargeable hour incurred.

Upon Bankruptcy Court approval of this agreement, the Company shall pay Duff & Phelps an initial cash retainer of $50,000.00 ("Initial Retainer"), due and payable upon execution of the Agreement

and which shall be held until the termination of this agreement to satisfy the full payment of any and all outstanding fees and expenses of Duff & Phelps under this Agreement.

**5.   Terms of Business**

The attached Terms of Business set out the duties of all parties to this engagement letter in respect of the Services.  The Terms of Business provide that, amongst other things, the Company will indemnify us against claims brought by any third party and that our aggregate liability to the Company, whether in contract, tort or otherwise will be limited; provided, however, that there will be no limit to our liability in respect of any claim that is directly or indirectly based on or arising from any conduct involving fraud, gross negligence, or willful misconduct of Mr. Varga or Duff & Phelps or any of its representatives.

This letter and the Terms of Business attached comprise the entire contract (the "Agreement") for the provision of the services to the exclusion of any other express or implied term, whether expressed orally or in writing, including any conditions, warranties and representations and shall supersede all previous letters of engagement, undertakings, agreements and correspondence regarding the services.

**6.   Governing Law and Jurisdiction**

This Agreement shall be governed by and interpreted in accordance with the laws of the New York. The Bankruptcy Court shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Agreement Contract and any matter arising from it.

**[Remainder of page intentionally left blank.  Signature page follows.]**

We trust the foregoing terms and provisions are agreeable to you, and request that you sign and return the enclosed copy of this Agreement to us at your earliest convenience.

Very truly yours,

DUFF & PHELPS, LLC

By: _____

Name: Geoffrey Varga

Title: Managing Director

**Confirmation of Terms of Engagement**

Having read both the engagement letter dated as of July __24__ 2018, among Duff & Phelps and the Company and the Terms of Business attached thereto (collectively, the "Agreement"), we agree to engage Duff & Phelps, LLC upon the terms set out herein.

Agreed and Accepted for and on behalf of:

**Ritchie Risk-Linked Strategies, L.L.C.**
By: Ritchie Capital Management, L.L.C.
    on behalf of Ritchie Partners

By: _____

Name: Mark Azzopardi

Title: Director

## General Terms and Conditions

These General Terms and Conditions ("Terms") are incorporated into the Agreement to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

### Section 1. Company Responsibilities

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by DUFF & PHELPS in connection with this Agreement.

The Company recognizes and confirms that in rendering services hereunder, Duff & Phelps will be using and relying on, and assuming the accuracy of, without any independent verification, data, material and other information (collectively, the "Information") furnished to Duff & Phelps by or on behalf of the Company or other third parties (including their agents, counsel, employees and representatives). The Company understands that Duff & Phelps will not be responsible for independently verifying the accuracy of the Information and shall not be liable for inaccuracies in any such Information.

DUFF & PHELPS's delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management.

In connection with any Chapter 11 filing, the Company shall apply promptly to the Bankruptcy Court for approval of the Company's retention of DUFF & PHELPS under the terms of the Agreement. The form of retention application and proposed order shall be reasonably acceptable to DUFF & PHELPS. DUFF & PHELPS shall have no obligation to provide any further services if the Company becomes a debtor under the Bankruptcy Code unless DUFF & PHELPS's retention under the terms of the Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to DUFF & PHELPS. The Company shall assist, or cause its counsel to assist, with filing, serving and noticing of papers related to DUFF & PHELPS's fee and expense matters.

### Section 2. Retainer, Billing, Payments and Taxes

**Retainer.** Upon execution of the Agreement, the Company shall promptly pay DUFF & PHELPS the agreed-upon advance retainer as set forth on Schedule 1. Invoices shall be offset against the retainer. Payments of invoices will be used to replenish the retainer to the agreed-upon amount. Any unearned portion of the retainer will be applied against the final invoice or returned to the Company at the end of the engagement

**Billing and Payments.** All payments to be made to DUFF & PHELPS shall be due and payable upon delivery of invoice via wire transfer to DUFF & PHELPS's bank account, as shown on the invoice. All amounts invoiced are based on services rendered and expenses incurred to date, and are not contingent upon future services or Work Product (as defined below), or the outcome of any case or matter. "Fees," as used in this Agreement, shall include all amounts payable by the Company to DUFF & PHELPS in accordance with the Agreement, including any success fee or break fee, but excluding reimbursable expenses.

If the Company becomes a debtor under the Bankruptcy Code, due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the date of filing, DUFF & PHELPS may have incurred but not billed fees and reimbursable expenses which relate to the prepetition period. DUFF & PHELPS will seek Court approval to apply the Retainer to these amounts.

**Taxes.** DUFF & PHELPS's fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on DUFF & PHELPS's income generally). If DUFF & PHELPS's fees are subject to any taxes, such as State sales tax, Goods and Services Tax/Harmonized Sales Tax or Value Added Tax, then DUFF & PHELPS will include such taxes on its invoices as separate line items.

### Section 3. Relationship of the Parties

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, DUFF & PHELPS will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Employees of DUFF & PHELPS will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. DUFF & PHELPS will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business.

DUFF & PHELPS is not an accounting firm and does not give accounting advice or guidance. While DUFF & PHELPS' work may involve analysis of accounting, business and other related records, this engagement does not constitute an audit in accordance with either generally accepted auditing standards or the standards of the Public Company Accounting Oversight Board or any other similar governing body.

### Section 4. Confidentiality

Each party shall use reasonable efforts, but in no event less effort than it would use to protect its own

confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other party during the performance of DUFF & PHELPS's services hereunder (the "Confidential Information"), and neither party will disclose any Confidential Information to any other person or entity. "Confidential Information" includes the terms of this Agreement, non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of either party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, DUFF & PHELPS from making such disclosures of Confidential Information that DUFF & PHELPS reasonably believes are required by law or any regulatory requirement or authority, to clear client conflicts DUFF & PHELPS may also disclose Confidential Information to its partners, directors, officers, employees, independent contractors and agents who have a need to know the Confidential Information as it relates to the services being provided under this Agreement, provided DUFF & PHELPS is responsible for any breach of these confidentiality obligations by any such parties. DUFF & PHELPS may make reasonable disclosures of Confidential Information to third parties, such as the Company's suppliers and/or vendors, in connection with the performance of DUFF & PHELPS's obligations and assignments hereunder, provided DUFF & PHELPS reasonably believes that such third party is bound by confidentiality obligations. In addition, DUFF & PHELPS will have the right to disclose to any person that it provided services to the Company or its affiliates and a general description of such services, but shall not provide any other information about its involvement with the Company. The obligations of the parties under this Section 4 shall survive the end of any engagement between the parties for a period of three (3) years.

Work Product (as defined in Section 5) may contain DUFF & PHELPS proprietary information or other information that is deemed to be Confidential Information for purposes of this Agreement. Therefore, the parties acknowledge and agree that (i) all information (written or oral), including advice and Work Product (as defined in Section 5) generated by DUFF & PHELPS in connection with this engagement is intended solely for the benefit and use of the Company in connection with this Agreement, and (ii) no such information shall be used for any other purpose, disseminated to any third parties, or quoted or referred to with or without attribution to DUFF & PHELPS at any time in any manner or for any purpose without DUFF & PHELPS's prior approval (not to be unreasonably withheld or delayed), except as required by law.

Because of the nature of the services provided by DUFF & PHELPS, from time to time, DUFF & PHELPS professionals may concurrently represent clients that are adverse to each other, or which may be viewed by clients to be adverse. Despite any such concurrent representation, each DUFF & PHELPS team shall strictly preserve all client confidences, and not disseminate such information externally, except pursuant to the terms of this engagement letter, or to any DUFF & PHELPS professionals that are currently working for an entity adverse to the Company. The Company agrees that it does not consider such concurrent representation of the Company and any adversary to be inappropriate and, therefore, waives any objections to any such present or future concurrent representation.

### Section 5. Intellectual Property

All analyses, final reports, presentation materials, and other work product (other than any Engagement Tools, as defined below) that DUFF & PHELPS creates or develops specifically for the Company and delivers to the Company as part of this engagement (collectively known as 'Work Product") shall be owned by the Company and shall constitute Company Confidential Information as defined above DUFF & PHELPS may retain copies of the Work Product and any Confidential Information necessary to support the Work Product subject to its confidentiality obligations in this Agreement.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, templates, models, utilities and other intellectual property that DUFF & PHELPS has created, acquired or developed or will create, acquire or develop (collectively, "Engagement Tools"), are, and shall be, the sole and exclusive property of DUFF & PHELPS The Company shall not acquire any interest in the Engagement Tools other than a limited, worldwide, perpetual, non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product.

The Company acknowledges and agrees, except as otherwise set forth in this Agreement, that any Engagement Tools provided to the Company are provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

### Section 6. Framework of the Engagement

The Company acknowledges that it is retaining DUFF & PHELPS solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

### Section 7. Indemnification and Other Matters

The Company shall indemnify, hold harmless and defend DUFF & PHELPS and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "DUFF & PHELPS Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of DUFF & PHELPS that is the subject of the Agreement except to the extent finally determined by a court of competent jurisdiction to have resulted from an DUFF & PHELPS's Party's own willful misconduct, gross negligence or fraudulent behavior The Company shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel. If, in the opinion of counsel, representing both parties in the matter covered by this indemnification creates a potential conflict of

interest, the DUFF & PHELPS Parties may engage separate counsel to represent them at the Company's expense.

In addition to the above indemnification, DUFF & PHELPS employees serving as directors or officers of the Company or affiliates will receive the benefit of the most favorable indemnification provisions provided by the Company to its directors, officers and any equivalently placed employees, whether under the Company's charter or by-laws, by contract or otherwise.

The Company shall specifically include and cover employees and agents serving as directors or officers of the Company or affiliates from time to time with direct coverage under the Company's policy for liability insurance covering its directors, officers and any equivalently placed employees ("D&O insurance"). Prior to DUFF & PHELPS accepting any officer position, the Company shall, at the request of DUFF & PHELPS, provide DUFF & PHELPS a copy of its current D&O policy, a certificate(s) of insurance evidencing the policy is in full force and effect, and a copy of the signed board resolutions and any other documents as DUFF & PHELPS may reasonably request evidencing the appointment and coverage of the indemnitees The Company will maintain such D&O insurance coverage for the period through which claims can be made against such persons. The Company disclaims a right to distribution from the D&O insurance coverage with respect to such persons. In the event that the Company is unable to include DUFF & PHELPS employees and agents under the Company's policy or does not have first dollar coverage acceptable to DUFF & PHELPS in effect for at least $10 million (e.g., there are outstanding or threatened claims against officers and directors alleging prior acts that may give rise to a claim), DUFF & PHELPS may, at its option, attempt to purchase a separate D&O insurance policy that will cover DUFF & PHELPS employees and agents only. The cost of the policy shall be invoiced to the Company as an out-of-pocket expense. If DUFF & PHELPS is unable or unwilling to purchase such D&O insurance, then DUFF & PHELPS reserves the right to terminate the Agreement.

The Company's indemnification obligations in this Section 7 shall be primary to, and without allocation against, any similar indemnification obligations that DUFF & PHELPS may offer to its personnel generally, and the Company's D&O insurance coverage for the indemnitees shall be specifically primary to, and without allocation against, any other valid and collectible insurance coverage that may apply to the indemnitees (whether provided by DUFF & PHELPS or otherwise).

DUFF & PHELPS is not responsible for any third-party products or services separately procured by the Company. The Company's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not against DUFF & PHELPS, whether or not DUFF & PHELPS is instrumental in procuring such third-party product or service.

DUFF & PHELPS acknowledges that, during the pendency of any Bankruptcy Court approved retention, these indemnification provisions are subject to modification as may be stated within the Bankruptcy Court's retention order.

### Section 8. Governing Law and Arbitration

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in New York, New York under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing, either party may proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement for any claim (and any subsequent counter claim) in connection with (i) the non-payment of Fees or expenses due under this Agreement, or (ii) the non-performance of obligations under Section 7.

In the event the Company files under Chapter 11, the Company and DUFF & PHELPS agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

### Section 9. Termination and Survival

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination DUFF & PHELPS will be entitled to any Fees and expenses due under the provisions of the Agreement (for fixed fee engagements, fees will be pro rata based on the amount of time completed). Such payment obligation shall inure to the benefit of any successor or assignee of DUFF & PHELPS.

Additionally, unless the Agreement is terminated by the Company due to DUFF & PHELPS's material breach (and such material breach continues after 30 days' written notice thereof and opportunity to cure), DUFF & PHELPS shall remain entitled to the success fee(s), if any, that otherwise would be payable during the 12 months after the date of termination of the Agreement.

Sections 2, 4, 5, 7, 8, 9, 10, and 11 of these Terms, and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

## Section 10. Limit of Liability

THE DUFF & PHELPS PARTIES SHALL NOT BE LIABLE TO THE COMPANY, OR ANY PARTY ASSERTING CLAIMS ON BEHALF OF THE COMPANY, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE, BAD FAITH, SELF-DEALING OR INTENTIONAL MISCONDUCT OF DUFF & PHELPS. THE DUFF & PHELPS PARTIES SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, LOST PROFITS, LOST DATA, REPUTATIONAL DAMAGES, PUNITIVE DAMAGES OR ANY OTHER SIMILAR DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE DUFF & PHELPS PARTIES' AGGREGATE LIABILITY, WHETHER IN TORT, CONTRACT, OR OTHERWISE, IS LIMITED TO the fees to Duff & Phelps under the Agreement (THE "LIABILITY CAP"). The Liability Cap is the total limit of the DUFF & PHELPS Parties' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by DUFF & PHELPS pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the DUFF & PHELPS Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against the DUFF & PHELPS Parties pursuant to this Agreement exceed the Liability Cap.

DUFF & PHELPS acknowledges that, during the pendency of any Bankruptcy Court approved retention, the Liability Cap may be subject to modification as may be stated within the Bankruptcy Court's retention order.

## Section 11. General

**Equitable Remedies.** Each party acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of the Agreement. Each party agrees that the non-breaching party shall have the right to seek a restraining order and/or an injunction for any breach of the Agreement If any provision of the Agreement is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

**Related Matters.** If an DUFF & PHELPS Party is required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Company shall reimburse DUFF & PHELPS for any professional time and expenses (including reasonable external and internal legal costs and e-discovery costs) incurred to respond to the request, except in cases where an DUFF & PHELPS Party is a party to the proceeding or the subject of the investigation DUFF & PHELPS will have the right to obtain independent legal counsel to obtain advice with respect to its services under this engagement. The Company will reimburse DUFF & PHELPS for the reasonable fees and expenses of such independent legal counsel.

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** This Agreement, including the letter, the Terms and the schedule(s), contains the entire understanding of the parties relating to the services to be rendered by DUFF & PHELPS and supersedes any other communications, agreements, understandings, representations, or estimates among the parties (relating to the subject matter hereof) with respect to such services, The Agreement, including the letter, the Terms and the schedule(s), may not be amended or modified in any respect except in a writing signed by the parties. DUFF & PHELPS is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Joint and Several.** If there is more than one party to this Agreement, the Company shall cause each other entity which is included in the definition of Company to be jointly and severally liable for the Company's liabilities and obligations set forth in this Agreement.

**Third-Party Beneficiaries.** The indemnitees shall be third-party beneficiaries with respect to Section 7 hereof.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to

DUFF & PHELPS, to:
Duff & Phelps, LLC
55 East 52nd Street
New York, NY 10055
Attention: General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to DUFF & PHELPS. All notices under the Agreement shall be sufficient only if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.