# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RITCHIE RISK-LINKED STRATEGIES, L.L.C.,<br><br>Debtor. | Chapter 11<br><br>Case No. 18-11555 (KJC)<br><br>**Objection Due: August 13, 2018, at 4:00 p.m. (Eastern)**<br>**Hearing Date: September 4, 2018, at 1:30 p.m. (Eastern)** |

## HUIZENGA MANAGERS FUND, LLC'S OBJECTION TO DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF POTTER ANDERSON & CORROON LLP AS SPECIAL LITIGATION COUNSEL

Of counsel:

Christopher J. Barber, Esq.
Gary W. Garner, Esq.
Jonathan D. Miller, Esq.
WILLIAMS MONTGOMERY & JOHN LTD.
233 S. Wacker Drive, Suite 6800
Chicago, IL 60606
Email: cjb@willmont.com
      gwg@willmont.com
      jm@willmont.com

-and-

Steve Jakubowski, Esq.
ROBBINS SALOMON & PATT, LTD.
180 N. La Salle Street, Suite 3300
Chicago, IL 60601
Email: SJakubowski@rsplaw.com

Date: August 13, 2018

**K&L GATES LLP**
Steven L. Caponi, Esq. (No. 3484)
600 N. King Street
Suite 901
Wilmington, DE 19801
Tel: (302) 416-7000
Email: steven.caponi@klgates.com

*Counsel To Huizenga Managers Fund, LLC*

**TABLE OF CONTENTS**

I. JURISDICTION AND VENUE ........................................................................................ 2

II. FACTUAL BACKGROUND ........................................................................................... 2

    A. Potter Anderson Manufactures Assets for the Debtor and Its Affiliates in Their Piecemeal Litigation in Delaware State Court ........................................................ 2

    B. As the Debtor Amasses Liabilities and its Multi-Venue Campaign of Piecemeal Litigation Unravels, Potter Anderson Becomes Conflicted ................................... 5

III. ARGUMENT ..................................................................................................................... 6

    A. Potter Anderson's Ongoing Representation of the Debtor's Creditors Is Disqualifying ............................................................................................................. 6

    B. Potter Anderson's Ongoing Representation of the Debtor's Members and Affiliates Is Disqualifying ........................................................................................ 8

    C. Potter Anderson's Approach for Compensation Appears to Be Problematic .......... 9

    D. Potter Anderson Has Multiplied the Debtor's Liabilities ........................................ 9

    E. Alternatively, This Court Should Deny Potter Anderson's Application as Premature ................................................................................................................ 12

    F. In Any Event, *Nunc Pro Tunc* Approval Is Inappropriate ..................................... 12

IV. CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Arkansas Co.*,
    798 F.2d 645 (3d Cir. 1986) ................................................................................... 12, 13

*In re BH & P Inc.*,
    949 F.2d 1300 (3d Cir. 1991) ............................................................................................ 8

*Cellular Eng'g, Ltd. v. O'Neill*,
    820 P.2d 941 (Wash. 1991) ............................................................................................... 7

*Conn. Nat'l Bank v. Giacomi*,
    699 A.2d 101 (Conn. 1997) ............................................................................................... 7

*Crown v. Kobrick Offshore Fund, Ltd.*,
    8 N.E.3d 281 (Mass. App. Ct. 2014) .................................................................................. 7

*Darnall Kemna & Co. v. Heppinstall*,
    851 P.2d 73 (Alaska 1993) ................................................................................................ 7

*Douglass v. Beakley*,
    900 F. Supp. 2d 736 (N.D. Tex. 2012) ............................................................................. 10

*In re Engel*,
    124 F.3d 567 (3d Cir. 1997) ............................................................................................ 12

*In re F/S Airlease II, Inc.*,
    844 F.2d 99 (3d Cir. 1988) .............................................................................................. 12

*In re Jeep Eagle 17, Inc.*,
    2009 WL 2132428 (Bankr. D.N.J. July 13, 2009) .............................................................. 9

*In re Keller Financial Services of Florida, Inc.*,
    248 B.R. 859 (Bankr. M.D. Fla. 2000) ............................................................................ 11

*In re Marvel Entm't Grp., Inc.*,
    140 F.3d 463 (3d Cir. 1998) ............................................................................................ 11

*McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*,
    263 A.2d 281 (Del. 1970) .................................................................................................. 4

*Meespierson Inc. v. Strategic Telecom Inc.*,
    202 B.R. 845 (D. Del. 1996) ............................................................................................. 6

*In re Nat'l Distribs. Warehouse Co.*,
    148 B.R. 558 (Bankr. E.D. Ark. 1992) .............................................................................. 9

*In re Phila. Athletic Club, Inc.*,
    20 B.R. 328 (E.D. Pa. 1982) ........................................................................................9, 11

*Ritchie v. Huizenga Managers Fund, LLC*,
    138 S. Ct. 739 (2018) ..........................................................................................................5

*Ritchie v. Huizenga Managers Fund, LLC*,
    2017 WL 7803924 (Del. Super. Ct. Dec. 21, 2017) ...........................................................3

*In re Roper & Twardowsky, LLC*,
    566 B.R. 734 (Bankr. D.N.J. 2017) .................................................................................7, 8

*In re Twinton Props. P'ship*,
    27 B.R. 817 (Bankr. M.D. Tenn. 1983) ............................................................................12

**Statutes**

11 U.S.C. § 327 ............................................................................................................................6

15 U.S.C. § 80b-5 ......................................................................................................................10

6 Del. C. § 18-805 .......................................................................................................................3

6 Del. C. § 73-605 ....................................................................................................................3, 7

Ill. Comp. Stat. 5/13-214.3 ........................................................................................................11

Now comes Huizenga Managers Fund, LLC ("Huizenga"), an unsecured creditor herein, for its objection to Ritchie Risk-Linked Strategies, LLC's (the "Debtor") Application for an Order authorizing the Debtor to retain Potter Anderson & Corroon LLP ("Potter Anderson") as the Debtor's special litigation counsel.  *See* D.I. 23.

In short, Potter Anderson is the architect of claims that the Debtor and its affiliates have manufactured in Delaware court.  Indeed, it is the author of Ritchie's operating mantra, as articulated in the initial complaint to the Third Delaware Action:

> [T]he contractual rights and obligations of members of [Ritchie Multi-Strategy Global, LLC] intentionally are interrelated with the contractual rights and obligations of the members of the MSG Master Fund and the Strategy Funds [i.e. the Debtor] . . . .

Ex. 5, B-77.  In other words, the entities' rights and obligations are so intertwined that they appear to offset (but, nevertheless, the entities have attempted to foist their "liabilities" to each other upon Huizenga via six separate actions filed in Delaware and Illinois, *see* MTD at 16–22, D.I. 32-1).  As such, Potter Anderson—together with the Debtor, Reed Smith (in other actions), and the Debtor's affiliates—has portrayed the Debtor as just another cog in Ritchie's Rube Goldberg machine.  *See* MTD at 5–6, D.I. 32-1.

In presenting those claims on behalf of the Debtor, Affiliated Judgment Parties, and other Ritchie entities, Potter Anderson has multiplied the liabilities of the Debtor and its affiliates.  As such, Potter Anderson's Application——more threadbare and boilerplate than even Reed Smith's Application—presents the same faux verisimilitude that plagues Reed Smith's Application.  And, for many of the same reasons that Reed Smith's Application, D.I. 22, should be rejected, Potter Anderson's Application should be too.  Huizenga submits this objection to Potter Anderson's Application, in its entirety, on the grounds that Potter Anderson is not

"disinterested" and, indeed, has interests that are adverse to the Debtor (the "Objection").  In support of its Objection, Huizenga respectfully states the following:

I. **JURISDICTION AND VENUE**

This Court has jurisdiction to consider Huizenga's objection pursuant to 28 U.S.C. §§ 157 and 1334.  Potter Anderson's Application, D.I. 22, presents a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

Venue for Potter Anderson's Application, D.I. 22, is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

II. **FACTUAL BACKGROUND**

On August 8, 2018, Huizenga filed a Motion to Dismiss this case for cause under Sections 305(a) and 1112(b), including, but not limited to, the requirement that Chapter 11 petitions be filed in good faith.  *See* D.I. 32.  And contemporaneous with this filing, Huizenga has submitted an objection to Reed Smith's parallel application to serve as the Debtor's bankruptcy counsel.  Huizenga incorporates the factual background and terminology contained in its Motion to Dismiss filing, as well as the factual background and arguments in its objection to Reed Smith's application, as if fully set forth herein.

   A. **Potter Anderson Manufactures Assets for the Debtor and Its Affiliates in Their "Piecemeal" Litigation in Delaware State Court**

Potter Anderson's Application is founded upon its so called "track record of providing the Debtor with effective and efficient legal services," *see* App. ¶ 10, D.I. 23, language that is notably absent from Reed Smith's parallel Application, D.I. 22.  As to Potter Anderson, that language can only refer to its "opinion letter" for the DSA Action (which the Illinois Supreme Court declined to even consider) and its representation of Ritchie entities in Delaware, *see id.* ¶¶

7–8, which has already failed in some cases and teeters on the brink of collapse in others. *See* MTD at 16–17 (First Delaware Action), 19–21 (Second and Third Delaware Actions), D.I. 32-1.

Upon close inspection, the three Delaware actions that Potter Anderson has either filed on behalf of the Debtor or in which it represents the Debtor demonstrate Potter Anderson's inability to serve as the Debtor's special litigation counsel:

*First Delaware Action*. While Potter Anderson did not file the Complaint in the First Delaware Action, it is now co-counsel to Reed Smith and represents the Debtor and each of the Affiliated Judgment Parties, who are also creditors of the Debtor. *See* Amended Schedules at 19, 22, D.I. 26. In that capacity, Potter Anderson has been integral to the Debtor's prosecution of its claims, including by arguing in opposition to Huizenga's motion to dismiss. *See, e.g.*, *First Delaware Action*, 2017 WL 7803924 (identifying Potter Anderson attorney John A. Sensing, Esq. as counsel for oral argument). As noted, the First Delaware Action is frivolous, for the Debtor seeks to recover on a contractual obligation that it is barred from invoking under DSA § 73-605(f). *See* MTD at 8, D.I. 32-1. And, what's more, in the Third Delaware Action, Potter Anderson, in representing another Ritchie entity (the Debtor's largest equity holder), has asserted that such entity has already indemnified the Debtor or Affiliated Judgment Parties for Huizenga's alleged liability to them, *see id.* at 20, which they seek to recover in the First Delaware Action.

*Second Delaware Action*. Potter Anderson is also the architect of claims brought by Ritchie CT Opps, LLC ("Ritchie Opps"), as the purported assignee of Thane Ritchie's defunct (and cancelled) energy fund, *see* MTD at 19–20, D.I. 32-1, which has no standing to pursue such claims under the Delaware Limited Liability Company Act, 6 Del. C. § 18-805 ("DLLCA"). In a tortured and legally irrelevant effort to cure the problem, Potter Anderson asserted in its original

complaint that Ritchie Opps "is the assignee of . . . , Ritchie Energy's rights." Ex. 4 ¶ 11, B-52–53. After Huizenga opposed the Complaint on the basis that a cancelled LLC cannot assign claims, Ritchie Opps, through Potter Anderson, came forward with averments that a new and previously undisclosed assignment from Ritchie Energy to Potter Anderson's client, the MSG Fund of Funds, (not yet produced) actually exists and was in existence at the time of the initial Complaint. Ritchie Opps describes this assignment as follows "[R]itchie Energy assigned all of its rights, title, and interest . . . to Ritchie Multi-Strategy Global, LLC (the "MSG Fund of Funds")" before Ritchie Energy was cancelled. *See* Ex. 6, B-93 ¶ 10. Then "[o]n February 6, 2018, the MSG Fund of Funds transferred all of rights, title, and interests that it had previously received from Ritchie Energy to [the Plaintiff] Ritchie Opps . . . ." *See id.*, B-94 ¶ 11. As such, Ritchie Opps somehow thinks the DLLCA would not bar its standing, even though its assignor became cancelled. These facts were all known to Ritchie Opps when it filed its claims on March 19, 2018. Nonetheless, it raised them first in an Amended Complaint, which Huizenga now seeks to dismiss on identical—and additional—bases.

*Third Delaware Action*. Third time is not the charm for Potter Anderson, as it continued to bring claims in Delaware court. This time, they filed contractual claims on behalf of the "MSG Fund of Funds" (Ritchie Multi-Strategy Global, LLC), without any basis for venue in Delaware because of state law against claim splitting. *See generally McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281 (Del. 1970). Undeterred by the Court's ruling in the First Delaware Action, the MSG Fund of Funds pursues an indemnification claim against Huizenga (founded upon the MSG Fund of Funds' alleged indemnification of the Debtor and Affiliated Judgment Parties).

4

Despite these issues, Potter Anderson apparently now seeks this Court's endorsement to continue these manufactured proceedings here in bankruptcy court. *See* App. ¶ 6, D.I. 23. It does so while the First Delaware Action remains stayed, App. ¶ 8, D.I. 23, and just as Potter Anderson does not purport to be pursuing any other action in the Debtor's name. As such, considering Potter Anderson's Application now serves no apparent purpose.

### B. As the Debtor Amasses Liabilities and its Multi-Venue Campaign of "Piecemeal" Litigation Unravels, Potter Anderson Becomes Conflicted

As the Debtor and its affiliates' "piecemeal" litigation unraveled, *see* MTD at 22–24, D.I. 32-1, Potter Anderson's representation of the Debtor and its affiliates has become problematic. These efforts appear to have begun in the DSA Action, when Potter Anderson was tasked with preparing "an opinion letter regarding Delaware law in connection with" the DSA Action, which would soon be litigated in the Illinois Supreme Court via Ritchie's petition for leave to appeal. *See* App. ¶ 7, D.I. 23.[1] Specifically, on March 7, 2017, Myron Steele, Esq., invoking his capacity as the former Chief Justice of the Delaware Supreme Court, opined on whether the DSA should have applied to Huizenga's claims in the DSA Action. *See* Ex. 1, B-1–4. According to the Debtor's Application, Potter Anderson's representation of the Debtor and the Affiliated Judgment Parties continued until the U.S. Supreme Court denied certiorari on January 16, 2018. *See* App. ¶ 7, D.I. 23. However, even while Potter Anderson represented the Debtor "in connection with" the DSA Action, *see id.*, it sought to file an amicus brief, with Mr. Steele as counsel of record, in support of the Debtor's cert petition, Ex. 3, B-27–49, a request that was granted. *See Ritchie v. Huizenga Managers Fund, LLC*, 138 S. Ct. 739 (2018). That amicus brief disclosed that Potter Anderson's then-clients, i.e. the Debtor and Affiliated Judgment

---

[1] Based on the Debtor's representation in its Application, Huizenga believes that such opinion letter is Exhibit 1, B-1–4, which two amici actually filed with a proposed amicus brief in support of the Debtor's petition to the Illinois Supreme Court. *See* Ex. 2, B-5–26.

5

Parties, "funded the preparation of this brief," i.e. the amicus brief.[2]  *See* Ex. 3, B-34.  It also disclosed that Potter Anderson "represent[s] Petitioners in litigation in the State of Delaware."  *See id.*  However, it said nothing about Potter Anderson's apparent ongoing, parallel representation of the Debtor in connection with its U.S. Supreme Court appeal.  *See* App. ¶ 7, D.I. 23.  With due respect to Mr. Steele and his service in the Delaware courts, in the Debtor's effort to disclose Potter Anderson's scope of service to this Court in its Application, it has actually disclosed for the first time that Potter Anderson was concurrently representing the Debtor, Affiliated Judgment Parties, and their supposed amici as to the Debtor's appeal to the U.S. Supreme Court.

For the reasons that follow, Potter Anderson, like Reed Smith, cannot extract itself from its conflicts with the Debtor and its affiliates, the Debtor's and its affiliates' potential unfiled litigation claims against Potter Anderson, and the liabilities that the Debtor and its affiliates continue to accrue, based on their litigation conduct through Potter Anderson.  That conduct need not continue in this Court.

### III. ARGUMENT

#### A. Potter Anderson's Ongoing Representation of the Debtor's Creditors Is Disqualifying

The trustee may only employ special litigation counsel that "does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."  *See* 11 U.S.C. § 327(e); *see Meespierson Inc. v. Strategic Telecom Inc.*, 202 B.R. 845, 847, 849–50 (D. Del. 1996) (reversing appointment of special litigation counsel).

---

[2] Based on Huizenga's investigation, Huizenga believes that it was actually Ritchie Capital Management SEZC, Ltd., an offshore entity, that funded the amicus brief.

Potter Anderson is adverse to the Debtor as to the piecemeal litigation in which it seeks to represent the Debtor. Indeed, it seeks to litigate the First Delaware Action (seeking indemnification for the Debtor's liabilities in the DSA Action from Huizenga), *see* App. ¶ 6, D.I. 23, while also representing the Debtor's indemnitor, i.e. the MSG Fund of Funds, in the Third Delaware Action (identifying the MSG Fund of Funds' indemnification of the Debtor as to the Third Delaware Action). *See* MTD at 20–21, D.I. 32-1. Of course, the MSG Fund of Funds could have avoided such indemnification by invoking Section 73-605(f) of the DSA against the Debtor and the Affiliated Judgment Parties because they violated the DSA in connection with the sale of investments to Huizenga. *See* MTD at 8, D.I. 32-1. However, were it to do so, Potter Anderson would be sacrificing the Debtor's offsetting indemnification claims against Huizenga, where Huizenga would also invoke the DSA bar provision in Section 73-605(f). *See also, e.g.*, *Darnall Kemna & Co. v. Heppinstall*, 851 P.2d 73, 78 (Alaska 1993); *Conn. Nat'l Bank v. Giacomi*, 699 A.2d 101, 127–29 (Conn. 1997); *Crown v. Kobrick Offshore Fund, Ltd.*, 8 N.E.3d 281, 292 (Mass. App. Ct. 2014); *Cellular Eng'g, Ltd. v. O'Neill*, 820 P.2d 941, 952 (Wash. 1991). As such, Potter Anderson is hopelessly conflicted.

Like Reed Smith, Potter Anderson also represents the Affiliated Judgment Parties, i.e. the Debtor's creditors, as to the indemnification claims against Huizenga in the First Delaware Action. *See* App. ¶ 7, D.I. 23. Given that representation, Potter Anderson, as the Debtor admits (at 2 n.2), is ill-equipped to pursue or defend against any rights of contribution as to the Affiliated Judgment Parties because such claims of Potter Anderson's clients are adverse to the Debtor. Such a conflict should disqualify Potter Anderson. *Accord In re Roper & Twardowsky, LLC*, 566 B.R. 734, 748–49 (Bankr. D.N.J. 2017) (creditors of debtor could not serve as special litigation counsel). It takes little imagination to conjure up situations during litigation where

strategies, facts, and negotiations beneficial to the Debtor could be adverse or disadvantageous to Potter Anderson's other clients, the Affiliated Judgment Parties. What is Potter Anderson to do in such a situation, since what is good for Thane Ritchie is no longer necessarily good for the Debtor? Potter Anderson simply cannot serve two masters (or a master and a feeder, as the case may be). *Cf.* Reed Smith App. ¶ 9 (positing that the Debtor was a feeder fund), D.I. 22.

Moreover, the Debtor's proposed fix in such circumstances, i.e. jettisoning Potter Anderson, App. at 2 n.2, D.I. 23, would be highly prejudicial to the Debtor. The fix would deprive the Debtor of counsel that has had the opportunity, through participation in the litigation between the Debtor and Ritchie entities, to be educated as to the strengths and weaknesses of the Affiliated Judgment Parties' claims against the Debtor. Potter Anderson's suggested cure would require the Debtor's new counsel to duplicate much of Potter Anderson's efforts—at additional and unnecessary expense to the Debtor—to "get up to speed."

> B. **Potter Anderson's Ongoing Representation of the Debtor's Members and Affiliates Is Disqualifying**

Potter Anderson is more conflicted still, as it currently represents shareholders of the Debtor, together representing more than 95% of the Debtor's membership. Potter Anderson currently represents the MSG Fund of Funds, i.e. Ritchie Multi-Strategy Global, LLC, in the Third Delaware Action. *See* MTD at 20, D.I. 32-1. That entity owns more than 95% of the Debtor's membership. *See* Petition at 12, D.I. 1. Meanwhile, Potter Anderson also represents Ritchie Partners, the Debtor's managing member, which owns approximately 1% of the Debtor's membership interests. *See* MTD at 5, D.I. 32-1. Yet, while Potter Anderson represents the Debtor, it also represents Ritchie Partners in the First Delaware Action.

Such representation is disqualifying under the law of the circuit. *Accord Roper*, 566 B.R. at 748–49; *see In re BH & P Inc.*, 949 F.2d at 1307–08, 1315, 1317 (3d Cir. 1991) (finding

8

actual conflict where proposed counsel simultaneously represented shareholder-creditors of the bankruptcy estate and bankruptcy estate); *see also, e.g.*, *In re Jeep Eagle 17, Inc.*, Civ. No. 09-23708, 2009 WL 2132428, at *4 (Bankr. D.N.J. July 13, 2009) (collecting cases, and finding actual conflict where debtors sought to retain counsel that would also represent shareholder-creditor); *In re Nat'l Distribs. Warehouse Co.*, 148 B.R. 558, 563–64 (Bankr. E.D. Ark. 1992) (disqualifying attorneys that represented debtor's shareholder in litigation where the debtor, principal, and others had "entanglement of interests"); *In re Phila. Athletic Club, Inc.*, 20 B.R. 328, 337–38 (E.D. Pa. 1982) (finding adverse interest where proposed counsel previously represented partners with ownership interest).

### C. Potter Anderson's Approach for Compensation Appears to Be Problematic

Perhaps cognizant of the issues with Reed Smith's proposed fee "financing," *see* Objection to Reed Smith App. at Section III(C), the Debtor posits that it would pay Potter Anderson's fees. *See* App. ¶ 15, D.I. 23. In other words, Potter Anderson would become a creditor of the Debtor during bankruptcy, further complicating any of the Debtor's efforts to revive itself.[3]

### D. Potter Anderson Has Multiplied the Debtor's Liabilities

For Potter Anderson's "track record of providing the Debtor with effective and efficient legal services," App. ¶ 10, D.I. 23, Potter Anderson appears to have actually increased the Debtor's liabilities. There is perhaps no clearer example of this than the Second Delaware Action, where Potter Anderson represents another Ritchie affiliate, namely Ritchie CT Opps, LLC ("Ritchie Opps"). Ritchie Opps proceeds as the purported assignee of claims from

---

[3] Based on the information provided, Huizenga is unable to assess whether that approach is consistent with past practice between the Debtor and Potter Anderson. Given Potter Anderson's track record of inadequate disclosures, including at the U.S. Supreme Court, *see supra* Section II(B), Huizenga respectfully submits that Potter Anderson's disclosures here are inadequate.

Ritchie's defunct energy fund, *see* MTD at 19, D.I. 32-1, which was managed by Potter Anderson's client, Ritchie Partners. One slight problem: Section 205(a)(2) of the Investment Advisers Act requires a client's, i.e. Huizenga's, consent to the assignment, *see* 15 U.S.C. § 80b-5(a)(2), which Ritchie never requested and Huizenga never provided. Such failure to obtain consent, while it does not invalidate the assignment, gives rise to a cognizable claim against Potter Anderson's client. *Accord Douglass v. Beakley*, 900 F. Supp. 2d 736, 748 (N.D. Tex. 2012) (plaintiff stated claim for violation of Section 205(a)(2) where it alleged that defendant "assign[ed] the benefits of the agreement to provide investment advisory services to others, namely the entities and individual defendants").[4] Were Ritchie Opps to be found so liable, would it then seek indemnification from the Debtor, i.e. Potter Anderson's client? Would Potter Anderson advise Ritchie Opps to do so? Would the gears of the Ritchie Rube Goldberg machine grind to a screeching halt? The circumstances of this case (and, in fact, Potter Anderson's pleadings in Delaware, *e.g.*, Ex. 5, B-77 ¶ 10), conjure up some disturbing possibilities.

Now, as to the DSA Action in which Potter Anderson provided an opinion letter, the circumstances are similarly disturbing. If Exhibit 1, B-1–4, is indeed the opinion letter that Potter Anderson provided to the Debtor, it says nothing about the Debtor's waiver of the DSA issue, for which it now seeks to pursue malpractice claims against Sidley. *See* Amended Schedules at 16, D.I. 26. Meanwhile, in the First Delaware Action, Potter Anderson co-signed the brief with Reed Smith in which the Debtor and Affiliated Judgment Parties described the Illinois courts' judgments as "problematic" and "manifestly incorrect." How then can Potter Anderson now represent the Debtor to argue that the judgments were correct after all and that the Debtor actually waived the issue through trial counsel? *See also* Reed Smith Objection at

---

[4] Huizenga only recently learned of this potential counterclaim and, accordingly, has not yet asserted it in the Second Delaware Action or otherwise.

10

Section III(D). To the extent Potter Anderson never advised the Debtor of its malpractice claims against Sidley, those claims may now be time barred under Illinois's two year statute of limitations and six year statute of repose (absent a tolling agreement). *See* 735 Ill. Comp. Stat. 5/13-214.3(b); *id.* (c). And now given the Debtor's waiver of the DSA issue, Huizenga will seek sanctions in the First Delaware Action for the Debtor's pretending otherwise.

This multiplication of liabilities, combined with Potter Anderson's other conduct on behalf of the Debtor (including at the U.S. Supreme Court), bespeaks its inability to appropriately serve the Debtor here. In *In re Keller Financial Services of Florida, Inc.*, the court found that although the debtor's attorneys did not hold "a direct economic interest that tended to lessen the value of the bankruptcy estate or that created a dispute in which the estate was a rival claimant," "the multiple transactions and relationships between the [attorneys] and insiders of the Debtors, and also between the [attorneys] and related nondebtor companies, caused the [attorneys] to possess an interest that colored the independence and impartial attitude required by the Bankruptcy Code." 248 B.R. 859, 895 (Bankr. M.D. Fla. 2000) (citing *In re Benjamin's-Arnolds, Inc.*, Case No. 90-6127, 1997 WL 86463, at *4 (Bankr. D. Minn. Feb. 28, 1997)); *Phila. Athletic*, 20 B.R. at 338 (firm that withdrew from representation of debtor's creditors could not serve as bankruptcy counsel because of appearance of conflict). While this appearance of impropriety is not independently disqualifying, *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 477 (3d Cir. 1998), taken together with the other circumstances discussed herein, leads to the inescapable conclusion that Potter Anderson would add nothing to these proceedings.

    **E.    Alternatively, This Court Should Deny Potter Anderson's Application as Premature**

Apparently eager to represent this Debtor, Potter Anderson fails to disclose any circumstances warranting this Court's intervention now. Indeed, Potter Anderson only

11

represents the Debtor in connection with the First Delaware Action, which is stayed. There, then, is no apparent reason to decide whether special litigation counsel is appropriate here, much less that Potter Anderson should be that counsel. If the stay in the First Delaware Action is lifted, Potter Anderson could re-apply then. *Accord In re Engel*, 124 F.3d 567, 575 (3d Cir. 1997) (affirming denial of fees to special litigation counsel, and stating, "Employment cannot be based on some 'hypothetical or speculative benefit'").

### F.       In Any Event, *Nunc Pro Tunc* Approval Is Inappropriate

As if the above were not alone disqualifying, Potter Anderson somehow seeks this Court's approval of its retention *nunc pro tunc* to the petition date. Why, the Application does not say. Indeed, the Debtor's litigation in which it is represented by Potter Anderson, i.e. Potter Anderson's only representation of the Debtor, has been stayed since December 2017. As such, there has been no need for Potter Anderson's services since then, and, therefore, no reason to approve Potter Anderson's Application *nunc pro tunc*.

This Court has the equitable discretion to consider whether such approval is appropriate. *In re Arkansas Co.*, 798 F.2d 645, 650, 650–51 (3d Cir. 1986); *see also In re F/S Airlease II, Inc.*, 844 F.2d 99, 105–06 (3d Cir. 1988). Such approval is only warranted under "extraordinary circumstances." *Arkansas*, 798 F.2d at 650; *see also In re Twinton Props. P'ship*, 27 B.R. 817, 819 (Bankr. M.D. Tenn. 1983) ("*Nunc pro tunc* applications must be the extraordinary exception rather than an accepted practice.").

No circumstance justifying *nunc pro tunc* approval is present here. As set forth above, Potter Anderson is far from the disinterested counsel that the Bankruptcy Code requires. *Arkansas*, 798 F.2d at 650. There is thus no reason to approve Potter Anderson's Application *nunc pro tunc*.

## IV. CONCLUSION

For the foregoing reasons, Huizenga respectfully requests entry of an order (i) denying the Application in its entirety, and (ii) granting such other relief to Huizenga as is just and appropriate.

Dated: August 13, 2018

**K&L GATES LLP**

/s/ Steven L. Caponi
Steven L. Caponi, Esq. (No. 3484)
600 N. King Street, Suite 901
Wilmington, DE 19801
Tel: (302) 416-7000
Email: steven.caponi@klgates.com


Of counsel:

Christopher J. Barber, Esq.
Gary W. Garner, Esq.
Jonathan D. Miller, Esq.
WILLIAMS MONTGOMERY & JOHN LTD.
233 S. Wacker Drive, Suite 6800
Chicago, IL 60606
Tel: (312) 443-3200
Email: cjb@willmont.com
    gwg@willmont.com
    jm@willmont.com

-and-

Steve Jakubowski, Esq.
ROBBINS SALOMON & PATT, LTD.
180 N. La Salle Street, Suite 3300
Chicago, Illinois 60601
Tel: (312) 456-0191
Email: SJakubowski@rsplaw.com

*Counsel To Huizenga Managers Fund, LLC*

13