## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RITCHIE RISK-LINKED STRATEGIES, L.L.C.,[1]<br><br>                Debtor. | Chapter 11<br><br>Case No. 18-11555 (KJC)<br><br>**Related Docket No. 32** |

### EMERGENCY MOTION TO SEAL HUIZENGA MANAGERS FUND, LLC'S MOTION TO DISMISS THE CASE PURSUANT TO 11 U.S.C. §§ 1112(b)

Ritchie CT Opps, LLC ("CT Opps" or the "Movant"), by and through its undersigned counsel, hereby submits this emergency motion (the "Seal Motion") for an order, pursuant to sections 105(a) and 107(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9018-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the Movant to file under seal the Motion to Dismiss the Case Pursuant to 11 U.S.C. §§ 1112(b) and 305(a) (the "Motion") of Huizenga Managers Fund, LLC ("HMF"), and all attachments thereto (D.I. 32). In support of this Seal Motion, the Movant respectfully represents as follows:

### JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 107(b), Bankruptcy Rule 9018, and Local Rule 9018-1.

---

[1]      The last four digits of the Debtor's tax identification number are 0458.

**BACKGROUND**

A.    **Case Background**

   3. On June 28, 2018, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

   4. On August 8, 2018, HMF filed its Motion to Dismiss the Case Pursuant to 11 U.S.C. §§ 1112(b) and 305(a), Memorandum of Law in Support, and Declaration of Steven L. Caponi in Support (D.I. 32) (collectively, the "Motion to Dismiss").

   5. As set forth in more detail below, the Motion to Dismiss contains certain confidential and proprietary information belonging to the Movants and, therefore, the Movant seeks approval from this Court to seal the Motion to Dismiss, along with all attachments.

B.    **Background Regarding the Confidential Information**

   6. The name "Ritchie" is the brand name used under license granted by the owner to a number of private investment funds ("RCM-Managed Funds") and separate non-fund entities that oversee the management and support functions for the Ritchie master funds and feeder funds ("Investment Managers"). The Investment Managers' functions cover a wide array of responsibilities including managing the day-to-day operations, advising on investments and exploring new investment opportunities.

   7. All of the RCM Managed Funds and Investment Managers are themselves separate legal entities each with their own set of equity interest holders, creditors and assets. However, most of the RCM-Managed funds and management entities contain the name "Ritchie" as their name brand name. The "Ritchie" name is derived from A.R. Thane Ritchie

who formed and oversaw the successful growth of the Ritchie family of private investment funds. The success (and continued success) of the Ritchie family of funds is inseparably tied to Mr. Ritchie's reputation within the relatively small world of private investment.

8.      Ritchie Energy was a Delaware limited liability company with its principal place of business in the Cayman Islands. On November 27, 2017, Ritchie Energy assigned all of its rights, title, and interest (including its rights, title, and interest in the Subscription Agreement and the CT OPPS Operating Agreement (as such terms are defined herein)) to Ritchie Multi-Strategy Global, LLC (the "MSG Fund of Funds") and then filed a Certificate of Cancellation with the Delaware Secretary of State.

9.      CT Opps is a Delaware limited liability company with its registered office in Wilmington, Delaware. On February 6, 2018, the MSG Fund of Funds transferred all of the rights, title, and interests that it had previously received from Ritchie Energy to Ritchie Opps, making Ritchie Opps the assignee of, and successor in interest to, all of Ritchie Energy's rights under the Subscription Agreement and the CT OPPS Operating Agreement (as such terms are defined herein). For convenience CT OPPS will refer to both Ritchie Energy and its successor Ritchie CT Opps LLC.

10.     HMF invested in CT OPPS by entering into two Subscription Agreements in 2004 (the "Subscription Agreements"). Pursuant to the Subscription Agreements, HMF became a Member of and subject to the Operating Agreement of CT OPPS (the "CT OPPS Operating Agreement," and the Subscription Agreements and CT OPPS Operating Agreement are hereinafter jointly referred to as the "Agreements").

11.     The CT OPPS (the "Fund") Operating Agreement contained express prohibitions against a Member (investor such as HMF) disparaging the Fund or an RCM Party.

The "Fund" is a contractual term in the CT OPPS Operating Agreement meaning CT OPPS.

"RCM Party" is a contractual term in the CT OPPS Operating Agreement that broadly describes

the Investment Managers and their directors, officers and employees since if they are not

specifically referenced they are broadly referenced under the definition of an "Affiliate."

   12. Under the terms of the CT OPPS Operating Agreement intellectual and

proprietary information is defined to include, but is not limited to, trading and investment

systems, techniques, strategies, data, financial products or services, processes, trade secrets or

other information or data utilized in investment or trading activities or used by any RCM Party.

   13. Under the terms of the CT OPPS Operating Agreement, confidential and

proprietary information includes the identities of the personnel of the Fund and RCM Parties, the

specific investment techniques utilized by the Fund, any information regarding a member, the

performance record of the Fund, and any other financial data of the Fund.

   14. Pursuant to the terms of the CT OPPS Operating Agreement:

- HMF agreed that the business and assets of the Fund and the RCM Parties are confidential and involve a wide range of proprietary information, including trade secrets financial or commercial information, and intellectual property and that disclosure of any such information may cause competitive harm to the Fund and/or RCP Parties;

- HMF agreed that all information with respect to such business and assets shall be presumed confidential and proprietary unless the Managing Member otherwise so indicates in writing;

- HMF agreed that, _except with prior written consent of the Managing Member_, _it has and shall at all times keep confidential and not, directly or indirectly, disclose, divulge, furnish or make accessible to anyone, or use in any manner that would be adverse to the interests of the Fund or any RCM Party_, and confidential or proprietary information to which such Member has been or shall become privy relating to the business or assets of the Fund or any of the RCM Parties;

- *HMF agreed that if it proposed to make a disclosure of information on the basis that the information is publicly available HMF shall inform the Managing Member prior to such disclosure and shall give the Managing Member the greatest extent reasonably practicable, <u>an opportunity to contest whether such information has in fact otherwise has been made public</u>*. HMF further agreed that it should only disclose such information if, and to the extent that, such disclosure is affirmatively made public. This condition applies regardless of how or who made the initial disclosure nor diminished by how long the information was allegedly publicly available;

- HMF is permitted to share confidential and proprietary information with "Permitted Confidents", defined to include HMF's attorneys, *but only if the Permitted Confident also agreed to undertake to hold such information strictly confidential to the extent required of HMF <u>and may not in any manner or respect use any such information for their personal gain</u>* and the HMF agreed to be fully responsible for any unauthorized use or disclosure of confidential or proprietary information by its Permitted Confident;

- HMF further agreed to a catch-all provision that in no event would HMF disclose or make available any information that would identify the investment assets or the investment strategies of any RCM Party or the Fund; and

- HMF agreed that it is prohibited from doing indirectly through third parties that which HMF had agreed not to do directly, such as the conduct set forth above.

15.    Regarding HMF's use of confidential information, HMF further agreed in the Operating Agreement to equitable and injunctive relief, on an emergency, temporary, preliminary and/or permanent basis to prevent any such breach or continuation thereof.  The foregoing provisions of the Agreements were intended to prevent the kind of conduct HMF has engaged in to harm the Ritchie brand.

C.    **The Illinois Lawsuit**

16.    In 2007, HMF sued several RCM Parties (the "Illinois Defendants"),

including the Debtor, in Illinois for alleged violations of Sections 7323(a)(2) and 7323(b) of the

Delaware Securities Act (the "DSA") (now codified at Sections 73-605(a)(2) and 73-605(b) of

Title 6 of the Delaware Code) (the "Illinois Lawsuit"), arising out of two investments HMF made

in the Debtor.  The Illinois trial judge, despite the fact that there was no nexus to Delaware,

except for a Delaware choice-of-law provision, nevertheless applied the DSA to the Illinois

transactions, and held that the Illinois Defendants violated the DSA with regard to HMF's

second investment.[2]  On appeal, the Illinois Appellate Court held – despite binding Delaware

Supreme Court authority that the DSA did not even apply – that the Illinois Defendants violated

the DSA as to both HMF investments.

D.    **The Chancery Action**

17.    CT OPPS has maintained that HMF has used disparagement and

confidential information in the post-judgment appeals, post-judgment collection activities, and in

other litigation spawned by the Illinois Lawsuit.  CT OPPS further believes that HMF's conduct

and actions violated the CT OPPS Operating Agreement.

18.    In order to protect the integrity of its intellectual property and to prevent

further violations of the CT OPPS Operating Agreement by HMF, CT OPPS filed suit against

HMF in the Court of Chancery for the State of Delaware, <u>Ritchie CT Opps LLC v. Huizenga</u>

<u>Managers Fund, LLC, Del. Court of Chancery, cause number 2018-0196-VCG</u> ( the "Chancery

Action").  Through the Chancery Court Action, CT OPPS sought injunctive relief against HMF

---

[2]    Delaware law changed after the Illinois court's judgments were entered in the case. <u>See</u> <u>A & R Logistics</u>
<u>Holdings, Inc. v. FdG Logistics LLC, 148 A.3d 1171</u> (Del. S.Ct. Sept. 28, 2016).

to prevent further disparagement and/or publication of confidential information in violation of the Agreements.

19.     During a hearing in the Chancery Action before Vice Chancellor Glasscock on March 27, 2018, counsel from Williams, Montgomery and John Ltd., on behalf of HMF, agreed that HMF would not oppose CT OPPS intervening in other litigation in which HMF has filed pleadings CT OPPS felt contained disparagement or confidential information in violation of the CT OPPS Operating Agreement and that HMF would not oppose CT OPPS' motion to seal those documents.  A true and correct copy of the March 27, 2018 transcript in the Chancery Action is attached hereto as <u>Exhibit B</u>.

20.     CT OPPS filed a petition to intervene in an Illinois case to seal documents based upon its Delaware agreement with HMF, but HMF opposed the intervention.   CT OPPS then returned to the Delaware Chancery Court to address HMF's violation of its earlier agreement in the Chancery Court Action.  Counsel for HMF, Mr. Garner, argued to Vice Chancellor Glasscock that the agreement as expressed on the record by such counsel allowed HMF greater freedom to oppose CT OPPS intervening and sealing documents that HMF filed. Vice Chancellor Glasscock disagreed stating:

> First of all, Mr. Garner, I'm not accusing you of bad faith, **but representations before me matter, and I made it very clear in the prior proceedings, at least I attempted to, that I was relying on the representations of counsel, and that judicial estoppel would result from my accepting those representations.**
>
> I have the transcript in front of me, and it said, "… if these exact plaintiffs - we look at it as plaintiffs, CT Opps brought by and through Ritchie Partners -- if they want to intervene, we're not going to oppose that. And we're not going to oppose them seeking to file under seal, but as I said earlier today, it's kind of up to the judge as to the scope."
>
> **So that could not be clearer to me. And if**

7

**your words did not adequately express the reservations that you had in your mind, then we had a miscommunication, but I don't think that what your clients have done in Illinois is consistent with the representations made to me.**

**So there really are two questions. One is what are the repercussions of that? And two, do we simply enforce the agreement going forward, do I enter a TRO, or do I do something else here?**

First of all, I am going to direct the defendants here to notify the judge in the Illinois case -- and that's Huizenga Managers Fund, LLC v. A. R. Thane Ritchie, 17 L 9244 -- that the Delaware Court had relied on a representation sufficient to be a judicial estoppel that the defendants here would not oppose the motion to intervene and the motion to seal before the Court in Illinois.

*****

The next thing I'm directing is that the **defendants here be liable for the reasonable costs of this motion**, which I think is only fair given the representation I understood that the defendants made the last time we were together.

A copy of the April 26, 2018 transcript from the Chancery Action is attached hereto as <u>Exhibit C</u>.

21.    In connection with the Motion to Dismiss, HMF has once again filed pleadings and exhibits that contain disparagement and confidential information in violation of the CT OPPS Operating Agreement, this time in this Court. Accordingly, CT OPPS has been compelled to file this motion seeking entry of an order on an expedited basis sealing the Motion to Dismiss in order to protect its confidential information and limit the damages incurred through HMF's ongoing disparagement.

## RELIEF REQUESTED

22.     By the Seal Motion, the Movant requests the entry of an order: (a) sealing

the Motion to Dismiss (including all attachments thereto); (b) keeping such Motion to Dismiss

confidential, protected under seal, and not available to any person or entity other than the Court,

the Debtor's counsel, and the U.S. Trustee, unless otherwise ordered by the Court; and

(c) granting the Movant such further relief as is just and appropriate under the circumstances.

## BASIS FOR RELIEF

23.     Bankruptcy Code section 105(a) permits the Court to "issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a).  Bankruptcy Code section 1109 provides the Movant, as a party in interest, the

right to be heard on any issue in this case.  See id. § 1109(b).  Moreover, pursuant to Bankruptcy

Code section 107(b), the Court may permit the Movant to have HMF's Motion to Dismiss held

under seal, thereby protecting the Movant from potential harm that may result from the

disclosure of certain confidential information in the documents.  See id. § 107(b).

24.     Specifically, section 107(b) provides, in relevant part, that:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy
> court's own motion, the bankruptcy court may—
>  (1)     protect an entity with respect to a trade secret or
>  confidential research, development, or commercial information.

Id.

25.     Bankruptcy Rule 9018 sets forth the procedures by which a party may

obtain a protective order authorizing the filing of a document under seal.  It provides, in relevant

part, that "[o]n motion, or on its own initiative, with or without notice, the court may make any

order which justice requires (1) to protect the estate or any entity in respect of a trade secret or

other confidential research, development, or commercial information . . . ." Fed. R. Bankr. P.

9018.  Further, Local Rule 9018-1(b) provides, in relevant part, that "[a]ny party who seeks to

file documents under seal must file a motion to that effect." Del. Bankr. L.R. 9018-1(b).

26.    Unlike its counterpart in Rule 26(c) of the Federal Rules of Civil

Procedure, Bankruptcy Code section 107(b) does not require an entity seeking such protection to

demonstrate "good cause."  See, e.g., Video Software Dealers Ass'n v. Orion Pictures Corp. (In re

Orion Pictures Corp.), 21 F.3d 24, 28 (2d Cir. 1994) (holding that a license agreement authorizing

a licensee "to reproduce, manufacture, distribute, and sell videocassettes" of three films contained

confidential commercial information).  Rather, if the material sought to be protected satisfies one

of the categories identified in Bankruptcy Code section 107(b), "the court is required to protect a

requesting interested party and has no discretion to deny the application." Orion Pictures, 21 F.3d

at 27.  Moreover, the resulting order should be broad (i.e., "any order which justice requires").  In

re Global Crossing, Ltd., 295 B.R. 720, 724 (Bankr. S.D.N.Y. 2003); Fed. R. Bankr. P. 9018.

Courts are required to provide such protections "generally where open inspection may be used as

a vehicle for improper purposes." Orion Pictures, 21 F.3d at 27.  Indeed, the "authority goes not

just to the protection of confidential documents, but to other confidentiality restrictions that are

warranted in the interests of justice." Global Crossing, 295 B.R. at 724.

27.    Courts have also found that such relief should be granted if the

information sought to be protected is "commercial information," defined as "information which

would result in 'an unfair advantage to competitors by providing them information as to the

commercial operations of the debtor.'" In re Alterra Healthcare Corp., 353 B.R 66, 75 (Bankr.

D. Del. 2006).

28.    However, commercial information does not have to rise to the level of a

trade secret to be protected under Bankruptcy Code section 107(b).  See Orion Pictures, 21 F.3d

at 28 (finding that Bankruptcy Code section 107(b)(1) creates an exception to the general rule

that court records are open to examination by the public and, under this exception, an interested

party has to show only that the information it wishes to seal is "confidential and commercial" in

nature).

29.     For several years HMF has caused CT OPPS to trail behind it from

litigation to litigation intervening to seal disparaging statements and confidential information that

HMF is prohibited from using and disclosing under its Operating Agreement.  The filing of the

Motion to Dismiss is yet another example of this behavior.

30.     HMF's Motion to Dismiss (along with the attachments) are in violation of

HMF's contractual obligations to CT OPPS not to disparage, not to disclose confidential

information without permission, not to disclose proprietary and intellectual information, not to

use third parties to do indirectly what HMF is prohibited to do under the terms of the Operating

Agreement, and to give CT OPPS the required notice before HMF used any confidential

information it claims is part of the public domain, among others.  HMF's violations in this

proceeding include:

- Attaching as Exhibit number 1 to the Declaration of Mr. Caponi a copy of the Ritchie Risk-Linked Strategies LLC Operating Agreement. (ECF 32-5) HMF is prohibited by the CT OPPS Operating Agreement from disclosing this document, which is confidential and includes "proprietary" information (as further defined within the CT OPPS Operating Agreement to include RCM Intellectual Property).

- Attaching exhibit number 29 to the Declaration of Mr. Caponi submitted in support of the Motion to Dismiss , which is the very same document that is the subject of CT OPPS's intervention in the matter of Huizenga Managers Fund LLC v. A.R. Thane Ritchie, et al., Circuit Court for Cook, County, Illinois, cause number 17-L-9244 (the "Cook Case").  It was HMF's disparagement and disclosure

of confidential information in the Cook Case that led to CT OPPS filing the Delaware Action and the agreement with HMF to seal such documents.  Yet, here again is the same document republished by HMF without HMF complying with any of the requirements of the Operating Agreement for HMF to obtain permission to use the confidential information reflected in the pleading prior to use, or if HMF claims that the information is in the public domain, notifying CT OPPS that it contends the information is in the public domain to allow CT OPPS the opportunity to prevent its further dissemination.

- Including a chart in its Brief in Support of its Motion to Dismiss that purports to show the interrelationship of RCM-managed funds and Investment Managers along with statements of what HMF believes each owns of others on the chart. (ECF 32-1,  pg. 5)  This chart (Exhibit 29 to the Motion to Dismiss)  is another version of the same chart that HMF included in their Second Amended Complaint that is the subject to a Motion to Seal filed in the Cook Case.  To the extent that these charts are accurate, HMF has violated its obligations under the CT OPPS Operating Agreement not to disclose the identities of RCM Parties and not to disclose the business assets of the RCM Parties. To the extent that the information in the charts are inaccurate, then HMF has violated its obligations under the CT OPPS Operating Agreement not to disparage especially when the charts are used to assert that RCM Parties are engaged in a fraudulent scheme that already includes false statements concerning RCM parties. In addition, HMF has violated the CT OPPS Operating Agreement by acting indirectly through its attorneys, to disclose confidential information that HMF is prohibited from doing itself.  In addition, Exhibit 29 is just an example of the disparaging, false and slanderous statements HMF and WMJ has made about RCM-managed funds, Investment Managers and RCM Parties.  For example, it attacked an RCM Party and RCM-Managed funds and Investment Managers in Exhibit 29 for having funds located overseas when HMF itself has maintained a fund with over $100 million dollars for more than 16 years in the same foreign country.

- Disparaging an RCM Party in footnote 4 on page 14 of HMF's Brief (ECF 32-1) and Exhibit 30 to the Motion to Dismiss.(ECF 32-7, pg. 119)  The disparaging comments are not only false and misleading but are protected from disclosure under the CT OPPS Operating Agreement.

31.    In the confidentiality section of the CT OPPS Operating Agreement HMF agreed that CT OPPS "and Managing Member, separately or together, shall be entitled to equitable and injunctive relief, on an emergency, temporary, preliminary and/or permanent basis, to prevent any such breach or continuation thereof."

32.    The confidentiality and non-disparagement provisions in the Operating Agreement are not boilerplate language taken from a template found on the Internet. Instead, the contracts in question were crafted by skilled attorneys, to be entered into exclusively by sophisticated parties with legal representation, who selected Delaware law for contract interpretation specifically because of the precedents established by the Delaware courts to strictly enforce contracts made between sophisticated parties.

33.    Additionally, the "confidentiality" provisions by which HMF agreed to abide include significantly more documents and information than typical boilerplate confidentiality provisions.  The confidentiality provision expressly includes "proprietary" information – which is further defined within the contract to include RCM Intellectual Property. The language of the contracts was intentionally and carefully drafted by counsel to balance the specific business objectives of a private investment fund with the business objectives of its sophisticated, "accredited," and "qualified" investors.

34.    The CT OPPS Operating Agreement provisions with respect to non-disclosure and non-disparagement, in particular, are necessary precautions because private investment funds and their investment managers (upon whose reputation the funds rely) are vulnerable to reputation intimidation.  Accordingly, such funds and their investment managers need to take proactive measures to protect their reputations.

35.    The most common mechanism that investment managers employ in this

regard is insistence on broad investor covenants related to confidentiality and non-disparagement.  Manager insistence on such covenants was born out of a series of cases where unscrupulous investors publicly disparaged an investment manager in an effort to pressure the manager for a large cash payment or redemption of their investment at a value greater than the investor would otherwise be entitled to receive, often to the detriment of other investors.  Having discovered that investors willing to disparage the manager publicly – irrespective of truth – have the power to completely ruin a fund and/or a manager's career overnight, investment managers concluded that they simply would not accept investor capital without the protection of non-disparagement and confidentiality covenants.  The protection is important to a fund and its other members for purposes of preventing conduct that will adversely affect the ability of the investment manager and the Fund to attract new investor capital.  Investment in CT OPPS was by invitation only through applications (the Subscription Agreements referenced above) and CT OPPS would not have accepted HMF as an investor without HMF's agreement to the aforementioned Operating Agreement provisions.

36.    Throughout the preceding litigations, HMF has often tried to paint over the fact that the various RCM-managed funds are owned by individual investors that own the securities issued by the fund and that (unlike HMF) have nothing to do with any litigation between HMF and Ritchie Risk-Linked Strategies LLC.  HMF instead attempts to focus the courts' attention on Mr. Ritchie, as if the use of the "Ritchie" name by other RCM-managed funds makes all of their individual confidential and proprietary information and other intellectual property fair game.  Of course, the contractual terms in the Agreements to which HMF has agreed, and, indeed, has never challenged expressly prohibit such ongoing public disclosure and disparagement by HMF.  The actions of HMF in this case, therefore, reach far beyond the parties

to this litigation.  The improper disclosure and disparagement have caused and continue to cause injury to the "Ritchie" brand and, thus, injury to the other funds, management companies, and more importantly, investors (other than HMF).

37.     In addition to CT OPPS' right to equitable and injunctive relief under the confidentiality provision of the CT OPPS Operating Agreement, HMF has agreed not to oppose CT OPPS's efforts to seal pleadings and documents filed by HMF that CT OPPS contends contain confidential information in the Chancery Action.   Accordingly, and for the reasons set forth herein, therefore, the Movant submits that the relief requested in this Seal Motion is appropriate and necessary under the circumstances.

### NOTICE

38.     Notice of this Seal Motion has been given by first class U.S. mail and/or hand delivery (for counsel in Delaware) to: (i) counsel to the Debtor; (ii) counsel to the United States Trustee; and (iii) any party that is entitled to or has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Movant believes that no other or further notice need be given.

WHEREFORE, the Movant respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested in the Seal Motion and such other and further relief as is just and proper.

Dated: August 14, 2018
      Wilmington, Delaware

*/s/ Mark L. Desgrosseilliers*
Mark L. Desgrosseilliers (Del. Bar No. 4083)
Morgan L. Patterson (Del. Bar No. 5388)
Womble Bond Dickinson (US) LLP
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone:  (302) 252-4320
Facsimile:  (302) 252-4330
Email:  mark.desgrosseilliers@wbd-us.com
Email:  morgan.patterson@wbd-us.com

Counsel to Ritchie CT Opps, LLC

16