**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| RITCHIE RISK-LINKED STRATEGIES, L.L.C., | Case No. 18-11555 (KJC) |
| Debtor. | **Objection Due: August 16, 2018, at 4:00 p.m. (Eastern)**<br>**Hearing Date: September 4, 2018, at 1:30 p.m. (Eastern)** |

**HUIZENGA MANAGERS FUND, LLC'S OBJECTION TO THE DEBTOR'S APPLICATION FOR AN ORDER AUTHORIZING (I) THE EMPLOYMENT AND RETENTION OF DUFF & PHELPS, LLC AND (II) THE DESIGNATION OF <u>GEOFFREY VARGA AS CHIEF RESTRUCTURING OFFICER</u>**

Now comes Huizenga Managers Fund, LLC ("Huizenga") an unsecured creditor herein, for its objection to Ritchie Risk-Linked Strategies, LLC's (the "Debtor") Application for an Order authorizing (i) the employment and retention of Duff & Phelps, LLC and (ii) the designation of Geoffrey Varga as Chief Restructing Officer (Duff and Phelps, LLC and Mr. Varga are referred to collectively to as "D&P"). As explained below, Huizenga objects to the Debtor's proposed retention and employment of D&P, because it is unnecessary and will waste assets the Debtor does not have.

## I.    <u>JURISDICTION AND VENUE</u>

This Court has jurisdiction to consider Huizenga's objection pursuant to 28 U.S.C. §§ 157 and 1334. The Debtor's application seeking authorization to retain and employ D&P (the "D&P Application"), D.I. 24, presents a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

Venue for the D&P Application, D.I. 24, is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    FACTUAL BACKGROUND

On June 28, 2018, the Debtor filed its voluntary petition. (the "Case"), D. I. 1. The Debtor retains possession and control of its assets and business as Debtor-In-Possession ("DIP") pursuant to section 1107 of the Bankruptcy Code (11 U.S.C. § 1107).

On July 27, 2018, the Debtor filed an application seeking authorization to retain Reed Smith as bankruptcy counsel for the Debtor and DIP (the "Reed Smith Application"[1]), D. I. 22. On July 27, 2018, the Debtor filed an application seeking authorization to retain Potter, Anderson and Corroon, LLC as special litigation counsel for the Debtor and DIP (the "Potter Application"), D.I. 23. And on July 30, 2018, the Debtor filed the D&P Application, D.I. 24.[2]

On August 8, 2018, Huizenga filed a Motion to Dismiss this Case for cause and bad faith. On August 13, 2018, Huizenga filed objections to the Reed Smith Application and the Potter Application for lack of disinterestedness and conflicts of interest (the "Law Firm Objections"). As the recitations of fact and law contained in the Motion to Dismiss and the Law Firm Objections are relevant and controlling here, Huizenga incorporates them by reference.[3]

---

[1] References to the Reed Smith Application appear as "RS App. ¶ ___."

[2] References to the D&P Application appear as "D&P App. ¶___."

[3] For convenience, Huizenga will continue to use the acronyms and abbreviations as set out in the Motion to Dismiss and Law Firm Objections.

III.    **ARGUMENT**

Huizenga objects to the retention and employment of D&P, because it is unnecessary and will waste assets the Debtor does not have. Virtually all of the services D&P proposes to perform for the Debtor—a defunct entity with no employees or business operations—are either ministerial or were previously performed by the Debtor's managing member, Ritchie Partners, LLC ("Ritchie Partners") at a minimal cost to Debtor.[4] The Debtor fails to explain why Ritchie Partners is now unwilling or incapable of performing these services and why its estate now has to pay D&P up to $35,000 per month to do so.

**A.    D&P Is a "Professional" under Section 327 of the Bankruptcy Code.**

Initially, Huizenga objects to the Debtor's assertion that D&P is not required to submit fee applications or obtain court approval of its fees, because it allegedly is not a professional to be employed pursuant to section 327 of the Bankruptcy Code. *See* D&P App. ¶ 25.

Although the Bankruptcy Code does not define a "professional person" under section 327, in the Third Circuit, courts generally look to the factors enunciated in *In re First Merchants Acceptance Corp.*, in determining whether an entity constitutes a professional:

(1)    whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization,

(2)    whether the employee is involved in negotiating the terms of a Plan of Reorganization,

(3)    whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations,

---

[4] Ritchie Partners, the Debtor's manager, is a creditor for management fees in the amount of $16,199.39. That total represents management fees for a period of 14 months, 2/15-3/16, or an average monthly management fee of $1,157.10**.** *See* Sched. E/F, Part 3.19, D.I. 26.

(4)     whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate, i.e. the qualitative approach,

(5)     the extent of the employee's involvement in the administration of the debtor's estate, i.e. the quantitative approach; and

(6)     whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term.

Case No. 97–1500 JJF, 1997 WL 873551, at *3 (D. Del. Dec. 15, 1997); *see also In re ACandS, Inc.*, 297 B.R. 395, 402 (Bankr. D. Del. 2003).

The D&P Application and Mr. Varga's declaration clearly reveal that D&P possesses all of the attributes of a professional person listed by the *First Merchant* court.

(1)     ***Whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization***:  D&P will "have full decision-making authority for and on behalf of the Debtor with respect to all matters in the Chapter 11 Case . . . ." D&P App. ¶ 14.

(2)     ***Whether the employee is involved in negotiating the terms of a Plan of Reorganization***:  D&P will have "full decision-making authority for . . . the development, terms and pursuit of confirmation, of a plan of reorganization." D&P App. ¶ 14.

(3)     ***Whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations***:  The Debtor has no business, work or operations, aside from the supervision of its litigation claims. *See* Attachment to Official Form 201 at p. 1, D.I. 17. Perhaps concerned about the strategy of Reed Smith and Potter Anderson, D&P's proposed duties expressly include "decisions regarding litigation strategy (including with respect to the assertion, settlement or prosecution of claims and causes of action that are the property of the Debtor's estate)…." D&P App. ¶ 14. This comes as the Debtor has now disclosed that Thane Ritchie himself, a creditor, is "an informal advisor to the Debtor and is currently an instrumental source of knowledge regarding the litigation described herein." *See* Combined Disclosure Statement at 18 n.5, D.I. 40.  As such, the Debtor appears to be proposing professionals in the alternative—if the proposed law firms are ill-

4

equipped to handle the litigation, they will go for broke with non-lawyer professionals.

(4) ***Whether the employee is given discretion or autonomy to exercise his or her professional judgment in some part of the administration of the debtor's estate, i.e. the qualitative approach***:  As noted above, D&P will "have full decision-making authority for and on behalf of the Debtor with respect to all matters in the Chapter 11 Case…." D&P App. ¶ 14.

(5) ***The extent of the employee's involvement in the administration of the debtor's estate, i.e. the quantitative approach***: D&P's proposed involvement extends to every aspect of this case, from employment of professionals, to asset realization, to claims allowance, to developing a plan of reorganization. Debtor is essentially proposing that D&P assume control of the Debtor for all purposes.

(6) ***Whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term***: Given Mr. Varga's experience and training, and the Debtor's obvious high esteem for D&P, the Debtor cannot seriously argue that D&P should not be considered a "professional" within the ordinary meaning of the term.

Based upon the foregoing, D&P is a professional who must be employed pursuant to section 327 of the Bankruptcy Code, and whose compensation is subject to court approval.

## B.  The Retention and Employment of D&P is Unnecessary and Wasteful

D&P's proposed services are unnecessary and wasteful of the Debtor's extremely limited resources. D&P asks to be compensated for those proposed services at rates from $125-$895 per hour, with a monthly fee cap of $35,000.00. D&P App. ¶¶ 20 & 21.

In a normal Chapter 11 case—i.e., one involving an operating business—D&P's employment may be appropriate, beneficial and cost effective for the Debtor. But this is not a normal Chapter 11 case. The Debtor is not an operating company, and it has not been one for several years. It has no employees, it has no payroll, it has no assets (other than highly contested—if not plainly frivolous—legal claims), and it has no income. The Debtor's sole

5

source of funding is a purported loan from an affiliated Ritchie entity (which the Debtor's representative at the Section 341 meeting testified he had never seen). And, those funds are budgeted to be spent almost exclusively on professional fees, presumably including D&P's $35,000 per month. That is the totality of Debtor's proposed financial activities for its budgeted future.

Simply put, there is nothing for D&P to do, other than perform some minor ministerial functions. An examination of the functions that the Debtor proposes D&P will perform confirms this point:

> *(a) Conduct/oversee bankruptcy preparation and filing activities, including: execution of relevant documents; retaining of all necessary financial/legal advisors, attending and appearing on behalf of the Debtor at bankruptcy hearings and 341 meetings of creditors and related ancillary bankruptcy matters;*

Other than attendance at the Section 341 meeting (which has already been conducted) these activities are routine, ministerial functions. D&P's attendance at Court hearings will merely add to the professional burden the estate must bear. Likewise, there is no reason D&P's expertise is necessary to execute "relevant documents," or to retain legal advisors. The Debtor has already shown itself capable of performing these tasks.

> *(b) Prepare and reconcile budgets and 13-week cash flows;*

Debtor's sole source of funding is a purported loan from a Ritchie affiliate, and its only significant expenses are professional fees (which will be determined by court order). There simply is no need for budgets or cash flows.

6

*(c) Assist with financial reporting to the Bankruptcy Court and any lenders;*

Debtor's financial activities are minimal and its only lender is a Ritchie affiliate. Any required financial reporting will be minimal and ministerial.

*(d) Develop, along with legal and restructuring professionals, a plan of reorganization and drive the process of exiting the Debtor from bankruptcy;*

The Debtor has no business and admits that its only substantial assets are litigation claims. The Debtor also admits that the purpose of its Chapter 11 filing is to maximize "the value of its litigation-related assets…." Reed Smith App. ¶ 42. Thus, any plan of reorganization will necessarily provide for the distribution of any litigation claims proceeds to creditors in their appropriate priority on a pro rata basis, with any surplus being retained by the Debtor. There is no on-going business to restructure and no assets to be sold or redeployed. The Debtor has not indicated any intent to restart its long-defunct business. There are no tax or other strategies to be developed. The only plan of reorganization that can be confirmed is essentially a liquidating plan.

*(e) Manage (with the assistance of counsel) litigation impacting the Debtor;*

Prior to the commencement of this Case, the "management" function was being performed by the Debtor's managing member, Ritchie Partners, Ritchie Partners' manager, Ritchie Capital Management, LLC ("Ritchie Capital"), and Ritchie's "undisputed captain" Thane Ritchie, at no or nominal cost.[5] From the long history of litigation pursued by and against the Debtor, it is hard to imagine that D&P can bring more experience and expertise to the pending litigation than the party

---

[5] *See* Memorandum Order & Judgment at p. 37, *Huizenga Managers Fund, LLC v. A.R. Thane Ritchie, et al.*, No. 07-CH-9626 (Ill. Cir. Ct. Cook Cty.) (Jan. 27, 2015).

that has been spearheading the effort for more than ten years—Thane Ritchie and his eponymous corporate affiliates. The Debtor has provided no reason to suggest that Ritchie Partners, Ritchie Capital, and Thane Ritchie are not competent to continue in this role.

The need for D&P is even less than at the time of the filing of the Application, however, since the Debtor has now filed its combined disclosure statement and plan (the "Plan"), so there is no unique expertise or knowledge relating to the Plan requiring D&P's services.

> *(f)  Coordinate activities and assist in communication with outside constituents;*

Other than professionals and bogus creditors manufactured for the purpose of justifying this bad faith filing, the Debtor has no "outside constituents" with which to coordinate or communicate. The Debtor should not be obligated to pay D&P $35,000 a month to perform this ministerial task.

> *(g)  Assist with all other matters as may be requested and that fall within D&P's expertise and that are mutually agreed upon between the Debtor and D&P.*

This undefined catchall "function" is illusory, as it depends on D&P's future agreement, which it has no obligation to provide. And as a practical matter, given the Debtor's total lack of operations, there are no other substantive matters for D&P to assist with.

Additionally, the Debtor's proposed blanket grant of authority to D&P—i.e., granting D&P "full decision-making authority for and on behalf of the Debtor with respect to all matters in the Chapter 11 Case"—is improper. While a fiduciary may delegate certain responsibilities, it remains liable if it fails to properly supervise the delegatee. See III Scott on Trusts, § 225.1 at 1794 to 1795. (3rd ed. 1967); *In re James*, 94 B.R. 350, 354 (Bankr. E.D. Pa. 1988). Worse, D&P is to be indemnified for anything it does short of gross negligence, willful misconduct or

fraud, including breaching the Debtor's fiduciary duties. In other words, D&P's mistakes would be financed by the Debtor's creditors.

**IV.**      **CONCLUSION**

For all of the foregoing reasons, Huizenga Managers Fund, LLC respectfully requests that this Court enter an order denying the motion to retain Duff & Phelps and grant such other relief as is just.


Dated:  August 15, 2018                         **K&L GATES LLP**

                                                /s/ Steven L. Caponi_____
                                                Steven L. Caponi, Esq. (No. 3484)
                                                600 N. King Street
                                                Suite 901
                                                Wilmington, DE 19801
                                                Tel: (302) 416-7000
                                                Email: steven.caponi@klgates.com

                                                Of counsel:

                                                Christopher J. Barber, Esq.
                                                Gary W. Garner, Esq.
                                                Jonathan D. Miller, Esq.
                                                WILLIAMS MONTGOMERY & JOHN LTD.
                                                233 S. Wacker Drive
                                                Suite 6800
                                                Chicago, IL 60606
                                                Tel:  (312) 443-3200
                                                Email: cjb@willmont.com
                                                       gwg@willmont.com
                                                       jm@willmont.com


                                                -and-

Steve Jakubowski, Esq.
ROBBINS SALOMON & PATT, LTD.
180 N. La Salle Street
Suite 3300
Chicago, IL 60601
Tel: (312) 456-0191
Email: SJakubowski@rsplaw.com

*Counsel To Huizenga Managers Fund, LLC*