## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| In re: | :    Chapter 11 |
| | : |
| | : |
| RITCHIE RISK-LINKED STRATEGIES, | :    Case No. 18-11555 (KJC) |
| L.L.C., | : |
| | : |
| Debtor. | :    **Hearing Date: TBD** |
| | x    **Objection Deadline: TBD** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MOTION OF THE UNITED STATES TRUSTEE
## FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR,
## IN THE ALTERNATIVE, CONVERSION OR DISMISSAL
## OF THE DEBTOR'S CHAPTER 11 BANKRUPTCY CASE

Andrew R. Vara, Acting United States Trustee for Region 3 (the "U.S. Trustee"), through

his undersigned counsel, hereby moves the Court for entry of an order directing the appointment

of a chapter 11 trustee or, in the alternative, converting the chapter 11 case of Ritchie Risk-

Linked Strategies, L.L.C. (the "Debtor") to one under chapter 7 or dismissing the Debtor's case,

and in support of his motion respectfully states as follows:

### PRELIMINARY STATEMENT

1.      The Debtor is snared in a web of debts and transactions involving insiders.

The Debtor is a private investment fund.  It has no employees, business operations, or revenue.

Ninety-nine percent (99%) of the Debtor's liquidated unsecured debt was obtained by insiders or

related parties on or shortly before the petition date.  Another insider, MSGT (defined below), is

the estate's only secured creditor and is seeking to provide DIP financing.  MSGT's security

interest was apparently perfected one week before the petition date, and a substantial portion of

its claim may be for fees that were paid to the Debtor's proposed bankruptcy counsel, Reed

Smith.  Reed Smith continues to represent A.R. Thane Ritchie in litigation involving the Debtor, even though Mr. Ritchie has an undisputed $13.4 million indemnification claim against the Debtor.  Mr. Ritchie appears to have caused the Debtor to incur its pre-petition secured debt to MSGT, and to incur unsecured debts on the day before the petition date.  Finally, acrimony exists between the Debtor and Huizenga Managers Fund, LLC, who have been adversaries in state-court litigation for 11 years.  In light of the foregoing, the Debtor is not in a position to discharge its fiduciary duties.  Cause exists to appoint a chapter 11 trustee under Section 1104(a)(1).

2.	Apparently aware of the problems with this case, the Debtor has moved to engage a "CRO."  The proposed "CRO," who has no pre-petition experience with the Debtor, would have sole discretion and full decision-making authority over the prosecution of the Debtor's bankruptcy case.  In other words, the Debtor is trying to hand-pick a new fiduciary in lieu of a chapter 11 trustee.  The Court should not permit the Debtor to evade the process Congress has provided for installing a trustee in a chapter 11 case.  The Court should order the appointment of a chapter 11 trustee.

3.	Alternatively, the Court should convert the case to one under chapter 7 or dismiss it as a bad-faith filing.

## JURISDICTION

4.	Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this motion.

5.	Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re*

*Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives

the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S.,*

*Inc)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6.      The U.S. Trustee has standing to request the relief sought in this motion

pursuant to 11 U.S.C. § 307.

## BACKGROUND

### A.  The Debtor

7.      On June 28, 2018, the Debtor filed a chapter 11 petition in this Court.

8.      The Debtor is a private investment fund.  Its principal place of business is

asserted to be in the Cayman Islands.  *See* D.I. 17.  The Debtor has no business operations and no

employees.  *See id.*  It has not generated any income since at least the end of 2015.  *See* D.I. 25 at

7.

9.      The Debtor has fewer than 50 creditors.  *See* D.I. 1 & 17.  The Official

Form 204 attached to the Debtor's petition identifies 14 unsecured creditors.  *See* D.I. 1.

10.     The Debtor owns no accounts receivable, inventory, equipment, or real

estate.  *See* D.I. 26.  Its assets consist of litigation claims, retainers paid to counsel, and a bank

account containing $92,272.94.  *See id.*

11.     The Debtor is a Delaware LLC.  Its managing member is Ritchie Partners,

L.L.C.  *See* D.I. 1 at 8 of 16.  Ritchie Partners, L.L.C. is managed by Ritchie Capital

Management, L.L.C.  *See id.*  The sole director of Ritchie Capital Management, L.L.C. is Mark

Azzopardi.  *See* D.I. 17 at 6.  Mr. Azzopardi is located in Malta.  *See id.*

12.     A.R. Thane Ritchie ("Mr. Ritchie") is a former officer or director of

Ritchie Capital Management, L.L.C. and Ritchie Partners, L.L.C.  *See* D.I. 40 § III.A.2 n.5.  He

also "serves as an informal advisor to the Debtor and is an instrumental source of knowledge" about the Debtor's litigation assets.  *Id.*

### B.  MSGT

13.    The Debtor is seeking to obtain debtor-in-possession ("DIP") financing from Ritchie Multi-Strategy Global Trading, Ltd. ("MSGT").  *See* D.I. 1 & 42.

14.    MSGT is the Debtor's only secured creditor.  *See* D.I. 26 Sched. D.  It is owed $5,157,217.49.  The Debtor believes MSGT's security interest is avoidable because the financing statement was filed one week before the petition date.  *See id* at 5.

15.    The pre-petition credit agreement between MSGT and the Debtor appears to have been executed by Mr. Ritchie on behalf of both parties.

16.    MSGT is an insider or related party of the Debtor.  *See id.* Sched. D.

17.    On July 27, 2018, the Debtor filed a motion to retain Reed Smith LLP as its bankruptcy counsel.  *See* D.I. 22.  The Debtor also filed a motion to engage Geoffrey Varga of Duff & Phelps, LLC as its chief restructuring officer ("CRO").  *See* D.I. 24.

18.    Pre-petition, Reed Smith was paid $2,271,968.54.  *See* D.I. 22 ¶ 66. Those funds were financed by MSGT and may be part of MSGT's $5,157,217.49 secured claim. *See id.*; *compare* D.I. 25 Global Notes § 2(c) (Debtor believes security interest granted to MSGT is avoidable preferential transfer because financing statement was not filed until June 21, 2018) *with* D.I. 22 ¶ 66 n.7 ("The prepetition litigation financing [provided by MSGT and paid to Reed Smith] was supposed to be secured by the Debtor's litigation claims.  However, [MSGT] did not file a financing statement until on or about June 21, 2018.  Thus, the Debtor believes that the related security interest is avoidable.").

4

19.     As of the petition date, Reed Smith was still owed $250,913.85.  *See* D.I.

22 ¶ 67.  Reed Smith asserts that $30,351.81 of the $250,913.85 is attributable to the Debtor and

will waive that amount.  *See id.*  The remaining $220,562.04 owed to Reed Smith will be paid by

the Debtor's non-debtor co-defendants.  *See id.*

20.     Reed Smith is representing Mr. Ritchie and others in certain lawsuits

involving the Debtor.  *See* D.I. 22 ¶¶ 57, 58, 62 & 63.  The Debtor's co-defendants in the

lawsuits "assert or may assert an indemnification claim . . . against the Debtor with respect to any

liability or expenses in such litigation."  *Id.* ¶ 64.

**C.  Huizenga**

21.     The Debtor has been adverse to Huizenga Master Fund, LLC

("Huizenga") in litigation since 2007.  *See* D.I. 40 § III.B.3.a.  Upon information and belief,

Huizenga invested about $10.4 million with the Debtor in 2005.  Thereafter, Huizenga sued the

Debtor and others for alleged violation(s) of state securities laws.  Huizenga asserts that it has

obtained more than $22 million in judgments against the Debtor and others, including Mr.

Ritchie.  *See* D.I. 32 at 1.

22.     One of Huizenga's judgments has been satisfied.  On or about April 24,

2018, an attorney for Mr. Ritchie apparently notified the Illinois trial court that had entered

judgment in favor of Huizenga that $14.1 million was in a trust account for Mr. Ritchie at the

law firm of Clayborne, Sabo & Wagner, LLP.  D.I. 40 § III.B.3.a.  Huizenga then obtained a

turnover order for $13,383,511.36, which Clayborne, Sabe & Wagner, LLP complied with on or

about April 25, 2018.  *See id.* and D.I. 22 ¶ 39.

23.     On or about April 26, 2018, Mr. Ritchie appears to have asserted an

indemnification claim against Huizenga for about $13.383 million.  *See* D.I. 32 Exh. 23.  Mr.

Ritchie has also asserted an indemnification claim against the Debtor for $13.383 million.  *See* D.I. 26 Sched. E/F 3.2.  Mr. Ritchie's claim is scheduled as undisputed.

24.     Huizenga's claim against the Debtor is scheduled as unliquidated, contingent and disputed.  *See* D.I. 26 Sched. E/F 3.10.  Upon information and belief, Huizenga may assert a several-million-dollar claim against the Debtor for attorney fees.

25.     The Debtor asserts it has tortious interference of contract claims against Peter Huizenga Jr. and Huizenga's lawyers.  Those entities allegedly "embarked upon a radical campaign to collect disputed debts.  The campaign depended upon the continued assault of the 'Ritchie' name . . . ."  D.I. 26 at 16.  The Debtor filed for bankruptcy to avoid "seemingly endless, piecemeal litigation with Huizenga that is now in its 12th year[.]"  D.I. 22 ¶ 42.

### D.  Insider or Related-Party Debt

26.     The Debtor has $34.7 million in liquidated unsecured debt.  *See* D.I. 26. Ninety-nine percent (99%) of that debt was obtained by insiders or related parties on or shortly before the June 28, 2018 petition date:

| Creditor | Claim amount | Nature of claim | Date incurred | Sched. E/F |
|---|---|---|---|---|
| Swansea Beneficiary Trust, LLC | $20,000,000.00 | Judgment | 6/28/18 | 3.22 |
| Mr. Ritchie | $13,383,000.00 | Indemnification | 4/30/18 | 3.1 |
| Ritchie Risk-Linked Opportunities, LLC | $1,000,000.00 | Judgment | 4/12/18 | 3.20 |
| Total | $34,383,000.00 | | | |

*See* D.I. 26.

27.    Swansea Beneficiary Trust, LLC ("Swansea") and Ritchie Risk-Linked Opportunities, LLC share the same mailing address. *See* Creditor Matrix, D.I. 1. Those entities and Mr. Ritchie do not appear on the Debtor's top-20 list, which suggests they are insiders. *See* Official Form 204 Instructions ("Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31).").

28.    Upon information and belief, Swansea sued the Debtor and the Debtor's managing member in Illinois state court in April 2018. Swansea alleged that the Debtor had wasted $20 million of insurance coverage defending spurious litigation. Swansea asserted its claim(s) as the assignee of Ritchie Multi-Strategy Global, L.L.C. *See* D.I. 32 Exh. 18.

29.    Ritchie Multi-Strategy Global, L.L.C. is the Debtor's parent. It owns 95.49% of the Debtor's membership interests. *See* D.I. 1 at 11 of 16.

30.    In its lawsuit against the Debtor, Swansea was represented by the law firm of Clayborne, Sabo & Wagner LLP. *See* D.I. 32 Ex. 18. Clayborne, Sabo & Wagner LLP represents or has represented the Debtor, including in litigation against Huizenga. *See id.* Exh. 27. *See also* D.I. 26 Sched. E/F 3.4 (Clayborne, Sabo & Wagner LLP listed as unsecured creditor for services rendered in June 2018). As discussed above, Clayborne, Sabo & Wagner LLP also appears to represent Mr. Ritchie. Mr. Ritchie apparently had a $14.1 million trust account at Clayborne, Sabo & Wagner LLP that Huizenga executed upon in late April 2018, leading to Mr. Ritchie's indemnification claim against the Debtor. *See* D.I. 40 § III.B.3.a.

31.    Upon information and belief, the Debtor did not enter an appearance in Swansea's lawsuit and was not represented by counsel.

32.    On the petition date, Swansea obtained a $20 million default judgment against the Debtor. *See* D.I. 25 Appx. A. Upon information and belief, the default judgment was

7

taken to defend against Huizenga's attempts to execute on the Debtor's assets, or to allow

Swansea to act before Huizenga could act.  Swansea's default judgment is scheduled as disputed.

*See* D.I. 26 Sched. E/F 3.22.

33.     At least two other debts were incurred shortly before the June 28, 2018

petition date:

| Creditor | Claim amount | Nature of claim | Date incurred | Sched. E/F |
|----------|--------------|-----------------|---------------|------------|
| Valterra Holdings, LLC | $25,142.00 | Unsecured note | 6/25/18 | 3.23 |
| Frank Fernandes | $24,982.00 | Unsecured note | 6/25/18 | 3.7 |

Valterra Holdings and Frank Fernandes are the third- and fourth-largest creditors on the top-20

list.  *See* D.I. 1 at 9 of 16.  Their claims are scheduled as undisputed.  *See* D.I. 26.

34.     The Debtor has provided a copy of the Valterra Holdings and Frank

Fernandes debt instruments to the U.S. Trustee.  The documents are dated as of June 27, 2018—

the day before the petition date.  The Debtor is the borrower under both sets of documents.  The

Debtor executed the instruments through one of its sub-advisors, Ritchie Capital Management

SEZC, Ltd.  The documents appear to have been executed by the sub-advisor's authorized

signatory: Mr. Ritchie.  Thus, Mr. Ritchie, through the sub-advisor, appears to have caused the

Debtor to incur debt just before the petition date.

**E.  341 Meeting**

35.     On July 31, 2018, the U.S. Trustee convened the Section 341 meeting of

creditors.  *See* D.I. 29.  Michael Cilento appeared and testified on behalf of the Debtor.  Mr.

Cilento is the chief operating officer of Ritchie Partners, L.L.C., which is the managing member

of Debtor.  *See* D.I. 1.  Mr. Cilento was appointed to that position on or about the petition date.

*See* D.I. 40 § III.A.2.

36.    At the 341 meeting, Mr. Cilento testified that the Debtor had filed for bankruptcy to preserve the value of its assets (namely, $40 million in potential litigation claims) and to stop frivolous lawsuits by other entities that could potentially erode the value of the Debtor's assets.  *See* D.I. 32 Exh. 48 at 10:8-19.

37.    The Debtor's 341 meeting has been continued to an open date.  *See* D.I. 29.

38.    On August 13, 2018, the Debtor filed a combined plan and disclosure statement and a motion to incur DIP financing from MSGT.  *See* D.I. 40 & 42.  The DIP term sheet was executed by B. Kent Martin as MSGT's authorized agent.  *See* D.I. 42 Exh. B at 7.  Swansea's complaint against the Debtor was verified by Kent Martin.

39.    The U.S. Trustee has not appointed a creditors' committee in this case.

## ARGUMENT

### A.  Chapter 11 Trustee Should Be Appointed under Section 1104(a)(1)

40.    Cause exists to appoint a chapter 11 trustee under Section 1104(a)(1) of the Bankruptcy Code because the Debtor is not in a position to fulfill its fiduciary duties.

41.    Section 1104(a) provides that the Court may order the appointment of a trustee at any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the U.S. Trustee, and after notice and a hearing.  11 U.S.C. § 1104(a).

42.    Section 1104(a)(1) requires the appointment of a chapter 11 trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management . . . [.]"

43.    The Bankruptcy Code does not define "cause."  Section 1104(a)(1) provides an illustrative but not exhaustive list of examples of cause.  *See In re Bellevue Place Associates,* 171 B.R. 615, 622-23 (Bankr. N.D. Ill. 1994).  Cause for appointment of a trustee can be something other than the examples listed in section 1104(a)(1).  *See* 11 U.S.C. § 102(3) ("includes" and "including" are not limiting).  Cause "may emerge from a wide variety of factual scenarios."  *In re W.R. Grace & Co.*, 285 B.R. 148, 158 (Bankr. D. Del. 2002) (citing *In re Intercat, Inc.*, 247 B.R. 911, 920-22 (Bankr. S.D. Ga. 2000)).  Determinations of cause are made on a case-by-case basis.  *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989).  Determining if cause exists is within the Court's discretion, but if cause does exist then the appointment of a trustee is mandatory.  *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989).

44.    A party moving for the appointment of a trustee under Section 1104(a) must establish the need for a trustee by clear and convincing evidence.[1]  *See In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 471 (3d Cir. 1998); *see also In re G-I Holdings, Inc.*, 385 F.3d 313, 320 (3d Cir. 2004).  However, the Court is not required to hold a full evidentiary hearing.  *See In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990).

---

[1] Although some Courts have held that grounds for the appointment of a trustee must be established by "clear and convincing" evidence, those Courts typically rely on decisions pre-dating *Grogan v. Garner,* 498 U.S. 279, 286 (1991).  *See, e.g., In re G-I Holdings, Inc.,* 385 F.3d 313 (3d Cir. 2004) (relying on *In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989)).  In *Grogan*, the Supreme Court ruled that when Congress does not specify the burden of proof in the Bankruptcy Code, the burden should generally be preponderance of the evidence: Congressional "silence is inconsistent with the view that Congress intended to require a special, heightened standard of proof." 489 U.S. at 286.  Thus, the better view—and one adopted in more recent cases—may be that *Grogan* applies and motions to appoint a trustee are governed by a preponderance of the evidence standard.  *See In re Keeley and Grabanski Land P'ship*, 455 B.R. 153, 162-63 (8th Cir. B.A.P. 2011); *Tradex Corp. v. Morse,* 339 B.R. 823, 829-32 (D. Mass. 2006).

45.     The appointment of a chapter 11 trustee should be the exception rather

than the rule.  *See In re Sharon Steel Corp.*, 871 F.2d at 1225.  This tilt against the appointment

of trustees arises from the debtor-in-possession's familiarity with its business and the fiduciary

duties it owes to creditors.  *See In re Marvel Entertainment Group, Inc.*, 140 F.3d at 471; *see

also Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp.

v. Chinery*, 330 F.3d 548, 577 (3d Cir. 2003) ("The idea that existing management is best

positioned to rescue a debtor from bankruptcy is precisely the reason why the appointment of a

trustee is exceptional in Chapter 11 reorganizations[.]").

46.     Courts' willingness to permit debtors to remain in possession "'is

premised upon an assurance that the officers and managing employees can be depended upon to

carry out the fiduciary responsibilities of a trustee.'"  *Commodity Futures Trading Commission

v. Weintraub*, 471 U.S. 343, 355 (1985) (*quoting Wolf v. Weinstein*, 372 U.S. 633, 651 (1963)).

47.     A debtor-in-possession's failure to fulfill its fiduciary duties may

constitute cause to appoint a chapter 11 trustee.  *See In re Marvel Entertainment Group, Inc.*, 140

F.3d at 474 (if debtor-in-possession fails to discharge its fiduciary duties, "'Section 1104(a)(1)

commands that the stewardship of the reorganization effort must be turned over to an

independent trustee.'" (quoting *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 526

(Bankr. E.D.N.Y. 1989)); *see also In re Ionosphere Clubs, Inc.*, 113 B.R. at 169 (chapter 11

trustee may be appointed when debtor-in-possession is incapable of fulfilling its fiduciary

duties).

48.     The fiduciary duties of a debtor-in-possession include maximizing the

value of estate assets for distribution to creditors;[2] open and honest disclosure to the Court and

---

[2] *See In re Mushroom Transportation Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004).

creditors;[3] filing monthly operating reports;[4] refraining from actions that could damage the estate or hinder a successful reorganization;[5] and being vigilant and attentive in advancing the estate's interests.[6]

49.    Cause exists to appoint a chapter 11 trustee in this case because the Debtor is not in a position to discharge its fiduciary duties.  First, the Debtor is hamstrung by insider debts.  Substantially all of the Debtor's liquidated unsecured debt was obtained by insiders or related parties on or shortly before the petition date.  Swansea, as the assignee of the Debtor's 95.49% parent company, was permitted to obtain a $20 million default judgment against the Debtor on the petition date.  Another apparent insider, Mr. Ritchie, has asserted a $13.383 million indemnification claim against the Debtor, which the Debtor is not disputing.  The Debtor has moved to obtain DIP financing from a third insider: MSGT.  MSGT (1) is the Debtor's only potentially secured creditor; (2) loaned money to the Debtor pursuant to an instrument that, on its face, was executed by Mr. Ritchie on behalf of both MSGT as lender and the Debtor as borrower; (3) has a (disputed) secured claim that may include amounts financed to pay $2.2 million of Reed Smith's pre-petition fees; and (4) apparently attempted to perfect its security interest against the Debtor's assets one week before the petition date.[7]

---

[3] *See In re Marvel Entertainment Group, Inc.*, 140 F.3d at 474.  *See also Tradex Corp. v. Morse*, 339 B.R. at 833 ("One of the most fundamental and crucial duties of a debtor-in-possession upon the filing of a Chapter 11 petition is to keep the Court and creditors informed about the nature, status and condition of the business undergoing reorganization.") (quoting *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. at 526).

[4] *See Matter of Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991).

[5] *See In re Marvel Entertainment Group, Inc.*, 140 F.3d at 471 (citing *Petit v. New England Mort. Servs.*, 182 B.R. 64, 69 (D. Me. 1995)).

[6] *See In re Martin*, 91 F.3d 389, 394 (3d Cir. 1996) (citing *In re Baird*, 112 F. 960, 960 (E.D. Pa. 1902)).

[7] MSGT is identified as an insider or related party on Schedule D.  Swansea is an insider insofar as it is an affiliate of the Debtor (as the assignee of the Debtor's 95.49% parent company (11 U.S.C. §§ 101(31)(E) & 101(2)(A))).  Alternatively, Swansea has a close relationship with the

50.     Second, it is not apparent that the Debtor properly exercised its fiduciary duties pre-petition.  For example, it is not evident why or how the Debtor permitted Swansea to obtain a default judgment against it on the petition date.  Swansea was represented by Clayborne, Sabo & Wagner LLP, who also represents or has represented Mr. Ritchie and the Debtor.  The Debtor did not enter an appearance or have representation in the Swansea lawsuit.  Mr. Cilento testified that he did not learn about Swansea's lawsuit until after the default judgment had been entered.  *See id.* Exh. 48 at 102:19-25.  The circumstances surrounding Swansea's default judgment should be closely scrutinized.  In addition, Mr. Ritchie appears to have caused the Debtor to incur debt on the day before the petition date to the third- and fourth-largest creditors on the top-20 list.  The Debtor has not disputed those debts.

51.     Third, the Debtor's proposed bankruptcy counsel may be ineligible for retention.  Section 327(a) of the Bankruptcy Code permits the retention of professional persons "that do not hold or represent an interest adverse to the estate . . . and that are disinterested persons . . . ."  *See also In re Congoleum Corp.*, 426 F.3d 675, 688-89 (3d Cir. 2005) (Section 327(a) "restricts retention of lawyers and other professionals to those who do not hold or represent and interest adverse to the estate and are disinterested.") *and In re American Home Mortgage Holdings, Inc.*, 411 B.R. 169, 175-76 (Bankr. D. Del. 2008) (same).

52.     The Bankruptcy Code does not define "adverse interest."  "A Court may

---

Debtor, and the circumstances of its default judgment against the Debtor suggest it dealt with the Debtor at less than arm's length.  *See In re Winstar Communications, Inc.*, 554 F.3d 382, 396-97 (3d Cir. 2009).  Mr. Ritchie is an insider insofar as he is in control of the Debtor (he appears to have caused the Debtor to incur its pre-petition secured debt to MSGT, and to incur undisputed unsecured debts the day before the petition date).  He is an insider insofar as he is an insider of an affiliate (under 11 U.S.C. § 101(2)(D), he is or was the authorized signatory of the Debtor's sub-advisor, Ritchie Capital Management SEZC, Ltd.).  Mr. Ritchie is also an "informal advisor to the Debtor and is an instrumental source of knowledge" about the Debtor's litigation claims.  D.I. 40 § III.A.2 n.5.

consider an interest adverse to the estate when counsel has 'a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant.'" *In re First Jersey Securities, Inc.*, 180 F.3d 504, 509 (3d Cir. 1999) (quoting *In re Caldor, Inc.*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996)). *See also In re N. John Cunzolo Associates, Inc.*, 423 B.R. 735 (Bankr. W.D. Pa. 2010) (same). *See also* 3 COLLIER ON BANKRUPTCY ¶ 327.04[2][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed).

53.     Section 101(14) defines "disinterested person" to mean a person that—

(A)     is not a creditor, an equity security holder, or an insider;

(B)     is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C)     does not have an interest materially adverse to the interest of the estate . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason[.]

54.     The Bankruptcy Code does not define "adverse interest."  "A Court may consider an interest adverse to the estate when counsel has 'a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant.'" *In re First Jersey Securities, Inc.*, 180 F.3d 504, 509 (3d Cir. 1999) (quoting *In re Caldor, Inc.*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996)). *See also In re N. John Cunzolo Associates, Inc.*, 423 B.R. 735 (Bankr. W.D. Pa. 2010) (same). *See also* 3 COLLIER ON BANKRUPTCY ¶ 327.04[2][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed).

55.     The Bankruptcy Code does not define the phrase "interest materially adverse to the interest of the estate" in Section 101(14)(C).  However, courts have interpreted the phrase to have a meaning similar to the Third Circuit's interpretation of "adverse interest" in

*First Jersey Securities. See*, *e.g.*, *In re El San Juan Hotel Corp.*, 239 B.R. 635, 646 (1st Cir. BAP 1999) ("materially adverse interest" defined as "the possessing or asserting of any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant or possessing a predisposition under circumstances that render such a bias against the estate real."); *see also In re Prince*, 40 F.3d 356, 361 (11th Cir. 1994) (same); *see also In re Costa Bonita Beach Resort Inc.*, 479 B.R. 14, 37 (Bankr. D. P.R. 2012) (same).

56.     Here, Reed Smith was paid $2.2 million pre-petition through financing provided by MSGT.  That financing may be included in MSGT's disputed secured claim, which the Debtor has a basis for seeking to avoid insofar as it was perfected during the preference window.  The Debtor does not have enough cash to pay Reed Smith's projected post-petition fees and expenses.  *See* D.I. 20.  If Reed Smith has historically been paid its fees by MSGT, then Reed Smith may have an incentive to advise the Debtor to be more lenient towards MSGT than towards non-insider third parties because MSGT is the source of funds that are paying Reed Smith's fees.  Will Reed Smith "bite the hand that feeds it quite as hard as the circumstances warrant[]"?  *In re Granite Partners,* 219 B.R. 22, 38 (Bankr. S.D.N.Y. 1998); *see also In re McKinney Ranch Associates*, 62 B.R. 249, 255 (Bankr. S.D. Cal. 1986) ("The jaundiced eye and scowling mien of counsel for the debtor should fall upon all who have done business with the debtor recently enough to be potential targets for the recovery of assets of the estate.").  Reed Smith also represents certain of the Debtor's co-defendants in state court litigation.  Those co-defendants "assert or may assert an indemnification claim . . . against the Debtor with respect to any liability or expenses in such litigation."  D.I. 22 ¶ 64.  One such co-defendant, Mr. Ritchie, apparently had his trust account executed upon and then asserted an undisputed $13.383 million

indemnification claim against the Debtor.  Reed Smith represents interests that are adverse to the estate and/or is not disinterested.  The firm may not represent the Debtor under Section 327(a).

57.     Even if the Debtor retains new counsel, a fundamental problem with the case remains: who is the ultimate decision-maker?  Mr. Cilento is not in control of the command or coordination functions of Ritchie Partners, L.L.C. and/or the Debtor.  *See* D.I. 17 at 6.  Mr. Azzopardi is not involved in the day-to-day command and coordination of Ritchie Partners, L.L.C. and/or the Debtor.  *See id.*  During the Section 341 meeting, Mr. Cilento testified that Mr. Azzopardi makes the Debtor's business decisions.  However, Mr. Cilento testified that he does not know if Mr. Azzopardi answers to Mr. Ritchie.  *See* D.I. 32 Exh. 48 at 47:20-23.  Mr. Ritchie appears to have caused the Debtor to incur its secured debt to MSGT and, on the day before the petition date, to incur unsecured debt to at least two other creditors.  The disclosure statement states that Mr. Ritchie continues to serve as an "informal advisor" to the Debtor.  D.I. 40 § III.A.2. n.5.  Mr. Ritchie and MSGT should not have any involvement, directly or indirectly, in the bankruptcy estate's decision-making processes.

58.     Fourth, acrimony appears to exist between the Debtor and Huizenga. Acrimony between a debtor and creditor may rise to the level of "cause" necessitating the appointment of a trustee under Section 1104(a)(1) of the Bankruptcy Code.  *See Marvel* 140 F.3d at 472-73; *see also In re Plaza de Retiro, Inc*., 417 B.R. 632, 640-41 (Bankr. D.N.M. 2009) ("The Court has observed that acrimony between a debtor-in-possession's management and the creditors that impedes the reorganization effort has routinely been found to constitute a ground for appointing a trustee."); *Petit v. New England Mortg. Servs., Inc. (In re Petit),* 182 B.R. 64, 70 (D. Me. 1995) ("[D]eep-seeded conflict and animosity between a debtor and its creditors provides a basis for the appointment of a trustee."); *In re Biolitec, Inc*., Case No. 13-11157

16

(DHS), 2013 WL 1352302, at *13 (Bankr. D.N.J. Apr. 3, 2013) (appointing trustee due to deep-seeded conflicts between the parties and their inability to resolve such conflicts).

59.     Acrimony exists "when the inherent conflicts extend beyond the healthy conflicts that always exist between debtor and creditor, or . . . when the parties begin working at cross-purposes" and such acrimony or lack of cooperation jeopardizes the reorganization process.  *Id.*; *see also In re Bellevue Place Assocs.,* 171 B.R. 615, 625 (Bankr. N.D. Ill. 1994) (parties were at a standstill on reorganization efforts and a "disinterested trustee was required to unfreeze and facilitate the decision making process"); *In re Emerging Commc'n*, No. 06-30007-JKF, 2007 Bankr. LEXIS 4763, at *26-27 (Bankr. D.V.I. Feb. 13, 2007) (appointing trustee where "the parties [were] embarked-on a course of litigation in [the] cases which, coupled with the acrimony between them, clearly and convincingly demonstrate[d] to the court that a neutral party [was] needed to investigate and determine whether or not to pursue (or defend, as the case may be) actions on behalf of the estates.").

60.     In *Marvel*, the Third Circuit affirmed the appointment of trustee due to the "deep-seeded conflict and animosity," between the debtors and its creditors. *Marvel*, 140 F.3d at 473. The Court of Appeals stated, "[t]he intense and high stakes bickering between the [debtor] interests and the Lenders does not instill confidence that the [debtor] interests could fairly negotiate with the creditors to whom they owe [fiduciary] duties, nor that reorganization will occur effectively." *Id*. at 474; *see also In re Nartron Corp*., 330 B.R. 573, 590-91 (Bankr. W.D. Mich. 2005) (ordering the appointment of a trustee in light of "the parties' inability to reach a consensus about anything; the flinging of accusations at each other; and the failure to demonstrate any ability to resolve matters cooperatively, [the Court] conclude[s] that there is no reasonable likelihood of any cooperation between the parties in the near future").

61.     In *Petit*, the District Court for the District of Maine stated that "[w]hile some degree of antagonism and animosity between a debtor and creditor can be expected in any bankruptcy proceeding, it has reached a particular intensity [in this case] which is complicating efforts to 'reorganize' the Debtor." *Petit*, 182 B.R. at 70.  The Court found that appointment of a trustee may have been the only way to ensure reorganization would proceed and affirmed the bankruptcy court's appointment of a chapter 11 trustee.  *See id.*

62.     In *The Bible Speaks*, the Bankruptcy Court for the District of Massachusetts appointed a chapter 11 trustee in a case when the court found that "[f]riction [had] developed between the Debtor and the Creditors' Committee which threaten[ed] to engulf [the] estate in costly and legalistic bickering over the entire range of the reorganization process." *In re The Bible Speaks*, 74 B.R. 511, 512 (Bankr. D. Mass. 1987). The Bankruptcy Court concluded that the need for a neutral party to mediate disputes between the parties was grounds for appointing a trustee. *Id.* at 513.

63.     Here, the Debtor and Huizenga have been litigation adversaries for 12 years.  The Debtor's combined plan and disclosure statement spends more than six single-spaced pages describing multiple lawsuits and appeals involving Huizenga.  The Debtor alleges that certain entities "embarked on a radical campaign to collect disputed debts" from the Debtor and others, and complains of a "continued assault of the 'Ritchie' name" and "seemingly endless, piecemeal litigation with Huizenga[.]"  D.I. 26 at 16 and D.I. 22 ¶ 42.  In one suit the Debtor and its co-plaintiffs unsuccessfully sought to appeal to the Illinois Supreme Court and the U.S. Supreme Court.  *See* D.I. 22 ¶ 56.  The parties have sought sanctions against one another.  *See id.* Exh. 1 ¶ 13(b) and D.I. 22 ¶ 41.  In this bankruptcy case, Huizenga may assert a several-million-dollar claim against the Debtor—for attorney fees.  *See* D.I. 32 at 1.  Huizenga has already

moved to dismiss the Debtor's case and has served discovery papers, and a non-debtor Ritchie entity has sought to seal Huizenga's motion to dismiss. *See* D.I. 32, 35 & 48. The acrimony appears to be deep-seeded.

64.   The proposed engagement of Mr. Varga as the Debtor's "CRO" does not solve the problems with this case. The Debtor does not need a CRO because it has no business operations to manage or meaningful capital structure to reorganize. Mr. Varga appears to have no pre-petition experience or familiarity with the Debtor: his engagement letter is dated, and his proposed engagement would be effective, as of July 24, 2018—almost one month after the petition date. Yet unlike CROs in other cases, Mr. Varga would not answer to anyone: "***Mr. Varga, in his capacity as CRO*** . . . ***shall, in his sole discretion, have full decision-making authority for and on behalf of the Debtor with respect to all matters in the Chapter 11 Case***[.]" D.I. 24 Exh. C at 2 (bold and italics in original). There is no board of directors or similar body that Mr. Varga would answer to. In substance, he would be the chapter 11 trustee. That is not permissible. The Bankruptcy Code vests the U.S. Trustee with authority to appoint a chapter 11 trustee pursuant to Court order and subject to Court approval. Where evidence exists of insider claims, a large default judgment on the petition date, conflicts of interest, and acrimony, and where it is unclear who brought Duff & Phelps, LLC to this case, the Court should not permit the Debtor to evade the only process Congress has provided for installing a neutral fiduciary.

65.   In light of the foregoing, the Debtor is not in a position to discharge its fiduciary duties. A chapter 11 trustee should be appointed for cause under Section 1104(a)(1).

### B.   Chapter 11 Trustee Should Be Appointed under Section 1104(a)(2)

66.   A chapter 11 trustee is also appropriate under Section 1104(a)(2).

67.     Section 1104(a)(2) requires the appointment of a chapter 11 trustee "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . . ."  Courts have construed Section 1104(a)(2) as establishing a "flexible standard" for the appointment of a trustee.  *See, e.g., In re Sharon Steel Corp.,* 871 F.2d at 1226; *see also In re Ionosphere Clubs, Inc.*, 113 B.R. at 168.  The statute gives the Court "particularly wide discretion" to appoint a trustee, even if no cause exists.  *In re Bellevue Place Associates,* 171 B.R. at 623; *accord In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988); *In re Sharon Steel Corp.,* 871 F.2d at 1226.

68.     Courts have considered the following factors in determining if the appointment of a trustee is in parties' best interests under Section 1104(a)(2): (a) the trustworthiness of the debtor; (b) the debtor's past and present performance and prospects for the debtor's rehabilitation; (c) the confidence or lack thereof of the business community and of creditors in present management; and (d) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment.  *See In re Ionosphere Clubs, Inc*., 113 B.R. at 168 (citing cases).

69.     The appointment of a chapter 11 trustee is in the estate's and creditors' best interests.  First, the Debtor's trustworthiness is a question mark.  The Debtor suffered a $20 million default judgment by Swansea on the petition date.  Swansea appears to have been represented by the same law firm that represents Mr. Ritchie, and the Debtor was unrepresented.  The same individual who verified Swansea's complaint against the Debtor may have also executed the DIP term sheet on behalf of the proposed DIP lender, MSGT.  MSGT, the only secured creditor, appears to have perfected its security interest during the preference period, and its claim appears to include the money that paid Reed Smith's fees.  Mr. Ritchie also appears to

have caused the Debtor to incur unsecured debts on the day before the petition date.  The foregoing activities should be closely scrutinized.  Second, the Debtor has no prospects for reorganization or rehabilitation because there are no business operations or meaningful capital structure to reorganize.  The Debtor has no employees or tangible assets and has not had income for several years.  Third, confidence in the Debtor's management appears to be lacking: the Debtor is seeking—post-petition—to install a new fiduciary who would have sole decision-making authority for the Debtor in its bankruptcy case.  Huizenga has moved to dismiss the case.  Fourth, the benefits derived from a chapter 11 trustee would outweigh the costs of appointment.  If a trustee is appointed, then the estate would have a detached, qualified fiduciary to investigate the Debtor's relationships and dealings with insiders, evaluate the Debtor's involvement in pre-petition litigation, solicit non-insider sources of DIP financing, prosecute claims objections, and seek other appropriate relief from the Court.  The cost and time needed to become familiar with the case would be comparable to Mr. Varga's proposed engagement.  A chapter 11 trustee is in the estate's best interests and should be appointed under Section 1104(a)(2).

### C.  The Case Should Be Converted to One under Chapter 7 or Dismissed

70.     If the Court declines to appoint a chapter 11 trustee, then the Court should convert the Debtor's chapter 11 case to one under chapter 7 or dismiss it.

71.     Section 1112(b)(1) of the Bankruptcy Code provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

72.     The examples of cause listed in Section 1112(b) are not exhaustive, and the Court has discretion in determining if cause exists.  *See Matter of NuGelt, Inc.*, 142 B.R. at 665; *see also* 7 COLLIER ON BANKRUPTCY ¶ 1112.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed).  The Court may convert or dismiss a case for reasons that are not specifically enumerated in Section 1112.  *See In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991).

73.     Bankruptcy courts may dismiss a chapter 11 filing for cause under § 1112(b) if the petition is not filed in good faith.  *In re PPI Enterprises (U.S.), Inc.*, 324 F.3d 197, 210-11 (3d Cir. 2003).

74.     The Bankruptcy Code does not define "good faith."  However, the Third Circuit has written that in the context of chapter 11, two inquiries relevant to the question of good faith are whether the petition (1) serves a valid bankruptcy purpose and (2) is filed simply to obtain a tactical litigation advantage.  *In re 15375 Memorial Corp. v. Bepco, L.P.*, 589 F.3d 605, 618 (3d Cir. 2009).

75.     Determining whether a petition has been filed in good faith involves a fact-intensive inquiry that takes stock of the totality of the circumstances.  *Id.*  The Debtor has the burden of establishing that its petition was filed in good faith.  *Id.*  A debtor can establish that its petition serves a valid bankruptcy purpose by showing that the filing preserves a going concern or maximizes the value of the debtor's estate.  *Id.* at 619.

76.     Factors relevant to an analysis of good faith include:

> o   single asset case;
>
> o   few unsecured creditors;
>
> o   no ongoing business or employees;
>
> o   petition filed on eve of foreclosure;

- two party dispute which can be resolved in pending state court action;

- no cash or income;

- no pressure from non-moving creditors;

- previous bankruptcy petition;

- post-petition conduct was improper;

- no possibility of reorganization;

- debtor formed immediately prepetition;

- debtor filed solely to create automatic stay; and

- subjective intent of the debtor.

*In re Primestone Investment Partners L.P.*, 272 B.R. 554, 557 (D. Del. 2002) (*citing, inter alia, In re SGL Carbon*, 200 F.3d at 165).

77.    The District Court in *Primestone* explained that the focus of the inquiry is whether the petitioner sought "to achieve objectives outside the legitimate scope of the bankruptcy laws" when filing for protection under chapter 11. *Id.* at 558, *citing*, among other cases, *SGL Carbon*, 200 F.3d at 165. "'[N]o single factor is determinative of a lack of good faith in filing a petition.'" *In re Primestone Investment Partners L.P.*, 272 B.R. at 558 (*quoting In re Tiffany Square Assocs., Ltd.*, 104 B.R. 438, 441 (Bankr. M.D. Fla. 1989)). *See also In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293 (Bankr. D. Del. 2011) (the debtor's chapter 11 petition was dismissed with prejudice; the debtor's only asset was ownership interests in a co-debtor entity).

78.    Section 1112(b)(2) provides:

The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and

specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—

> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
>
> > (i) for which there exists a reasonable justification for the act or omission; and
> >
> > (ii) that will be cured within a reasonable period of time fixed by the court.

79. The party seeking conversion or dismissal has the initial burden of showing cause exists. *See In re Products International Co.*, 395 B.R. 101, 109 (Bankr. D. Ariz. 2008). If the movant establishes cause under Section 1112(b)(1), then the burden shifts to the debtor to show unusual circumstances exist under Section 1112(b)(2). *See In re Ramreddy, Inc.*, 440 B.R. 103, 112-13 (Bankr. E.D. Pa. 2009)(citing *DCNC North Carolina I, L.L.C. v. Wachovia Bank, N.A.*, 2009 WL 3209728 at *4 (E.D. Pa. 2009)).

80. The U.S. Trustee respectfully submits that this case should be converted to one under chapter 7 or dismissed because an application of the *Primestone* factors demonstrates bad faith:

| Primestone | Debtor |
|---|---|
| Single asset case | Only assets are bank account, retainers, and litigation claims. |
| Few unsecured creditors | Fourteen non-insider unsecured creditors. |
| No ongoing business or employees | No business operations or employees. |
| Petition filed on eve of foreclosure | Debtor does not appear to have assets that can be foreclosed on; sole security interest was apparently perfected by insider one week before petition date. |
| Two-party dispute which can be resolved in pending state court action | Debtor and Huizenga have been adverse in state-court litigation for 12 years. |
| No cash or income | Debtor has less than $100,000 cash and has not had income for years. |
| No pressure from non-moving creditors | U.S. Trustee reserves argument on this point, subject to conducting discovery and/or a trial on the merits. |
| Previous bankruptcy petition | Upon information and belief, no previous bankruptcy petition. |
| Post-petition conduct was improper | Too early to tell.  However, Debtor is seeking to engage new fiduciary to prosecute bankruptcy case.  U.S. Trustee also has questions about certain questionnaires that were submitted for service on a creditors' committee. |
| No possibility of reorganization | Debtor has no business operations or meaningful capital structure to reorganize. |
| Debtor formed immediately prepetition | Debtor was not formed immediately pre-petition.  However, Debtor incurred substantially all of its liquidated unsecured debt on or shortly before petition date, and insider apparently attempted to perfect security interest against Debtor's assets one week before petition date. |
| Debtor filed solely to create automatic stay | Debtor filed for bankruptcy, in part, to avoid "seemingly endless, piecemeal litigation with Huizenga that is now in its 12th year[.]" D.I. 22 ¶ 42. |
| Subjective intent of debtor | U.S. Trustee reserves argument on this point, subject to conducting discovery and/or a trial on the merits. |

81.     Once the Court has determined cause exists under Section 1112(b), the Court must choose between dismissal or conversion based on the best interests of creditors and the estate.  *See In re American Capital Equipment, LLC*, 688 F.3d 145, 161 (3d Cir. 2012). The Court has "wide discretion to use its equitable powers to make an appropriate disposition of the case."  *Id.* at 163 (quotation marks, citation omitted).  In determining what is in the best interests of creditors, the Court may compare creditors' rights in bankruptcy with their rights under state law.  *See Matter of NuGelt, Inc.*, 142 B.R. at 669.  The Debtor's case should be converted rather than dismissed so that a detached fiduciary can investigate the Debtor's affairs and insider claims and reconcile claims against the estate.

## RESERVATION OF RIGHTS/CONCLUSION

The U.S. Trustee reserves all rights and remedies, including, without limitation, to take discovery and to complement, supplement, augment, alter, substitute, modify or renew this motion.

WHEREFORE, the U.S. Trustee requests that the Court order the appointment of a chapter 11 trustee for the Debtor's case.  Alternatively, the U.S. Trustee requests that the Court convert the Debtor's chapter 11 case to one under Chapter 7 of the Bankruptcy Code or dismiss it.

Dated: August 15, 2018
Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE,**
**REGION 3**

By: */s/ Benjamin Hackman*
Benjamin A. Hackman
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207,
Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (fax)